DAVID HORNIAK (SBN 268441)
david.horniak@us.dlapiper.com
**DLA PIPER LLP (US)**
500 8th St NW
Washington, DC 20004-2131
Telephone: 202.799.4361
Facsimile: 202.799.5361

MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
ACE HARDWARE CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SCOTT PFLAUMER, HANS CUMMINGS, and MARK ROSENTHAL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ACE HARDWARE CORPORATION,

Defendant.

Case No. 5:26-CV-02151-EJD

**DEFENDANT ACE HARDWARE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: September 10, 2026
Time: 9:00 a.m.
Judge: Hon. Edward J. Davila
Courtroom: Courtroom 4
San Jose Courthouse
280 South First Street, 5th Fl.
San Jose, CA 95113

Complaint Filed: March 12, 2026

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE THAT on September 10, 2026 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila, United States District Judge, Northern District of California, located at San Jose Courthouse, 280 South First Street, Courtroom 4, 5th Floor, San Jose, California 95113, Defendant Ace Hardware Corporation ("Ace") will, and hereby does, move for an order dismissing the claims of Plaintiffs Scott Pflaumer, Hans Cummings, and Mark Rosenthal (collectively, "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing and Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted. The Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN"), the Declaration of Matthew C. Danaher ("Danaher Decl."), all pleadings and papers on file in this matter, and such other and further evidence and argument as may be presented at the time of the hearing or otherwise.

Ace moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiffs fail to allege an actual and concrete injury-in-fact sufficient to confer Article III standing. Ace moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to state: (1) a federal Wiretap Act claim, 18 U.S.C. § 2510, *et seq.*; (2) an intrusion upon seclusion claim; (3) a fraud, deceit, and/or misrepresentation claim; or (4) unjust enrichment, and that Plaintiff Pflaumer additionally fails to plead: (1) invasion of privacy under the California Constitution, Art. I, sec. 1; (2) violations of the California Invasion of Privacy Act's wiretapping provision, or pen register provision, Cal. Penal Code §§ 631(a), 638.51(a); (3) a violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770, *et seq.*; or (4) a violation of the California Unfair Competition Law, Cal. Bus. & Prof. § 17200, *et seq.* Ace brings this Motion expressly reserving all rights, without waiver of its Motion to Compel Arbitration (ECF No. 20), and solely in the event that Plaintiffs' claims are determined not to be arbitrable. For each and all of these reasons, Ace's Motion should be granted.

Dated: June 17, 2026

DLA PIPER LLP (US)

By: /s/ David Horniak
DAVID HORNIAK

*Attorneys for Defendant*
ACE HARDWARE CORPORATION

**TABLE OF CONTENTS**


Page

I. INTRODUCTION ....................................................................................1

II. STATEMENT OF FACTS ....................................................................2

A. ...... Ace's Website ..................................................................................2

B. ...... Plaintiffs' Interactions with the Website.........................................3

III. ISSUES TO BE DECIDED ..................................................................4

IV. LEGAL STANDARD.............................................................................4

A. ...... Rule 12(b)(1): Standing ....................................................................4

B....... Rule 12(b)(6): Failure to State a Claim...............................................4

V. PLAINTIFFS LACK ARTICLE III STANDING. ......................................5

A. ...... No Collection or Disclosure of Plaintiffs' Personal Information. ..........5

B. ...... None of the Allegedly Collected Information is Actionable. ................6

C. ...... Plaintiffs Fail to Allege Their Information Diminished in Value. ...........8

VI. PLAINTIFFS' CIPA AND ECPA WIRETAPPING CLAIMS FAIL. ...........9

A. ...... Plaintiffs Fail to Allege Interception of "Contents" while "In Transit." ...............10

B. ...... Pflaumer Fails to Allege Aiding and Abetting Liability for His CIPA Claim. ......................11

1. ....... Ace had no intent to unlawfully wiretap. ..........................................12

2. ....... The "Tracking Entities" had no intent to unlawfully wiretap. ...................12

C. ...... The "Tracking Entities'" Consent Defeats Plaintiffs' ECPA Claim. ....................13

VII. PFLAUMER'S CIPA PEN REGISTER CLAIM FAILS. ............................14

A. ...... The Statute's Plain Language Excludes Website Tracking Technology. ..............15

B. ...... The Statute's Legislative History Excludes Website Tracking Technology. ........15

C. ...... The Pen Register Statute Does Not Encompass the "Tracking Tools." ................16

VIII. PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL. ..........................17

A. ...... Plaintiffs' Allegations Preclude a Reasonable Expectation of Privacy. ................17

B. ...... The Disclosure of Plaintiffs' Basic Information is Not Highly Offensive. ...........17

C. ...... Plaintiffs Fail to Allege Ace Committed an Intentional Invasion of Privacy. ....18

IX. PLAINTIFFS' FAILURE TO ALLEGE THE INADEQUACY OF LEGAL REMEDIES PRECLUDES THEIR CLAIMS FOR EQUITABLE RELIEF. ....19

X. PFLAUMER'S CLRA AND UCL CLAIMS FAIL FOR ADDITIONAL REASONS. ...19

A. ...... Pflaumer Lacks Statutory Standing to Bring His UCL and CLRA Claims. ....20

1. ....... Pflaumer Fails to Allege Cognizable Harm. ....20

2. ....... Pflaumer Fails to Allege that He is a "Consumer" Under the CLRA. ....21

B. ...... Pflaumer's CLRA Claim also Fails for Lack of Notice and Venue Affidavit. ....21

1. ....... Pflaumer Failed to Provide Pre-Suit Notice. ....21

2. ....... Pflaumer Failed to Provide a Venue Affidavit. ....22

XI. PLAINTIFFS FAIL TO PLEAD FRAUD DAMAGES. ....23

XII. PLAINTIFFS FAIL TO PLEAD ACE UNJUSTLY RETAINED ANY BENEFIT. ....23

XIII. CONCLUSION ....24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................23

*B.K. v. Desert Care Network.*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) ....................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4

*Browning v. Am. Honda Motor Co., Inc.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) ....................19

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ....................24

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ....................22

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ....................5

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ....................20

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................9, 14

*Escobar v. Hershey Co.*,
2026 WL 1303061 (N.D. Cal. May 12, 2026) (Davila, J.) ....................19

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....................12

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ....................5, 9

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ....................8, 16

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ......................................................................10

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ..........................................................................18

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ........................................................................8

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ........................................................................23

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) .....................................................................................19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................17, 18

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ..........................................................................8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................................................................17, 18

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025)......................................................................5

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) ......................................................................23

*Herron v. Best Buy Stores, Ltd.*,
2014 WL 2462969 (E.D. Cal. May 29, 2014) ..............................................................22

*Higginson v. Kia Motors Am., Inc.*,
341 Cal. Rptr. 3d 732 (Cal. Ct. App. 2026), *review denied* (Apr. 29, 2026)......................21,22

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)..................................................................23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................18

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) (Davila, J.) ..............................................14

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) .......................................................................................4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................................................13

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....................7

*King v. Conde Nast Pubs.*,
2012 WL 3186578 (C.D. Cal. Aug. 3, 2012)....................20

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)....................5

*Kleffman v. Vonage Holdings Corp.*,
2007 WL 1518650 (C.D. Cal. May 23, 2007), *aff'd*, 387 F. App'x 696 (9th Cir. 2010)....................21

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....................10, 11

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)....................14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................4

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)....................7, 8

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................11

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)....................4

*Meyer v. Sprint Spectrum L.P.*,
200 P.3d 295 (2009)....................21

*Mike Goldstein v. Rumble Inc.*,
2026 WL 1406766 (C.D. Cal. Apr. 24, 2026)....................16

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. 2023)....................6

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025)....................5, 17

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024)....................16

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................4

*Ng v. US Bank, NA*,
2016 WL 5390296 (N.D. Cal. Sept. 26, 2016) ....................20

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ....................11, 12

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) ....................10, 19

*Outboard Marine Corp. v. Super. Ct.*,
124 Cal. Rptr. 852 (Cal. Ct. App. 1975), *superseded by statute on other grounds Flores v. Southcoast Auto. Liquidators, Inc.*, 226 Cal. Rptr. 3d 12 (Cal. Ct. App. 2017)....................22

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025)....................20

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................1, 6, 7, 8

*Rabin v. Google LLC*,
2023 WL 4053804 (N.D. Cal. June 15, 2023) ....................23

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................7

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....................13

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................9

*Schallert v. Palo Alto Networks, Inc.*,
2026 WL 754028 (Cal. Super. Ct. Mar. 06, 2026) ....................15

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....................8, 10

*Shulman v. Group W Productions, Inc*.,
955 P.2d 469 (Cal. 1998) ....................17, 18

*Smith v. Maryland*,
442 U.S. 735 (1979)....................15

*Smith v. YETI Coolers, LLC*,
2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ........ 12

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 11

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) ........ 5

*Svenson v. Google Inc.*,
2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ........ 8

*Tash v. Vision Serv. Plan*,
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) ........ 7

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003) ........ 21

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 17

*United States v. Gonzalez, Inc.*,
412 F.3d 1102 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006) ........ 15

*In re USA Today Co., Inc. Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ........ 5, 7

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 11

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........ 18, 23

*Welborn v. IRS*,
218 F. Supp. 3d 64 (D.D.C. 2016) ........ 9

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........ 4

*Wilson v. Google LLC*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025) ........ 13

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 13, 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................10

**Statutes**

18 U.S.C. § 2510 ....................4

18 U.S.C. § 2511 ....................1, 9

18 U.S.C. § 2511(2)(d)....................13, 14

Cal. Bus. & Prof. Code § 17200 ....................4

Cal. Civ. Code § 1761(d) ....................21

Cal. Civ. Code § 1770 ....................4

Cal. Civ. Code § 1780(a)....................20, 21

Cal. Civ. Code § 1780(d) ....................22

Cal. Penal Code § 631(a) .................... *passim*

Cal. Penal Code § 638.50....................17

Cal. Penal Code § 638.50(b) ....................16

Cal. Penal Code § 638.51....................1, 4, 15, 16

**Other Authorities**

Ace's website, www.acehardware.com ....................1

Analysis of California Assembly Bill 929, California 2015-2016 Regular Session
(June 16, 2015)....................15

California Constitution, Art. 1, sec. 1 ....................4

Fed. R. Civ. P. 12(b)(1)....................4

Fed. R. Civ. P. 12(b)(6)....................4

Judicial Council of California Civil Jury Instructions, Instruction § 4701 ....................22

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This lawsuit is an attempt to conjure liability out of commonplace website tracking technologies and a malfunctioning cookie banner on Ace's website, www.acehardware.com (the "Website"). It involves a formulaic class action complaint that attempts to transform commonplace website analytics technologies into nine causes of action. The crux of Plaintiffs' Complaint is that, upon visiting the Website, they were presented with a cookie banner that allowed them to select "Necessary Cookies Only," but certain cookies were allegedly not disabled and transmitted data to third parties. *See* Compl. ¶¶ 2, 7, 11, 15-17. Absent from the Complaint is any allegation that Ace intended this result, or that it actually caused any of Plaintiffs' superficially termed "Sensitive Information" to be collected or disclosed. Plaintiffs' Complaint should be dismissed for multiple, independent reasons:

*First*, Plaintiffs fail to allege a concrete injury-in-fact sufficient to confer Article III standing because they do not allege that any of offensive or embarrassing information of their own was actually collected or disclosed, or that they were injured by any alleged disclosure. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

*Second*, Plaintiffs fail to state a claim under the Federal Wiretap Act ("ECPA") because Plaintiffs fail to plead interception of the "contents" of their communications while "in transit," or that this one-party consent statute's crime-tort exemption nullifies the "Tracking Entities'" valid consent. *See* 18 U.S.C. § 2511, *et seq.*

*Third*, for similar reasons, Plaintiffs fail to state a claim under the California Invasion of Privacy Act's ("CIPA") wiretapping provision. *See* Cal. Penal Code § 631(a). Plaintiffs also fail to allege that either Ace or any third party intended to commit an unlawful "wiretap."

*Fourth*, Plaintiffs fail to plead a violation of CIPA's pen register provision (Cal. Penal Code § 638.51) because the plain text and legislative history confirm the statute does not apply to website tracking technology, and, even if they did, Plaintiffs have failed to plead the "Tracking Tools" constitute a pen register or trap and trace device (collectively, "pen register").

*Fifth*, Plaintiffs' intrusion upon seclusion claim and Pflaumer's California Constitution

invasion of privacy claim both fail because Plaintiffs do not allege that Ace engaged in any intentional or offensive conduct.

*Sixth*, to the extent Plaintiffs seek equitable relief throughout the Complaint, these claims fail because Plaintiffs fail to allege an adequate remedy at law.

*Seventh*, Pflaumer's UCL and CLRA claims fail because Pflaumer lacks statutory standing to bring either claim and failed to comply with the CLRA's strict pre-suit notice and venue affidavit requirements.

*Eighth*, Plaintiffs' fraud claim fails because Plaintiffs fail to adequately allege damages.

*Ninth*, Plaintiffs' unjust enrichment claim fails because Plaintiffs fail to identify any benefit conferred on Ace or expense Plaintiffs incurred.

For each and all of these reasons, the Complaint should be dismissed with prejudice.

## II. STATEMENT OF FACTS

### A. Ace's Website

Ace owns and operates the Website. Complaint ("Compl.") ¶ 2. Through the Website, visitors may browse and purchase products and services, create and manage accounts, and explore offers and deals. *See id.*

"Like many modern websites, the Website displays a cookie banner." Compl. ¶ 2. As Plaintiffs' Complaint acknowledges, the Cookie Banner clearly states that "Ace Hardware and other third parties collect data when you shop, participate in Ace Rewards, through cookies, including session recording, during chat sessions and as described in our Privacy Policy. By selecting any of the options below, by closing this window by clicking 'x', or by continuing to browse, you accept and agree to our **TERMS OF USE**, **Notice of Financial Incentive**, **Categories of Personal Information**, and **Privacy Policy**." *See, e.g.*, *id.* ¶ 2. The Cookie Banner contains links to each of Ace's Terms of Use, Notice of Financial Incentive, Categories of Personal Information (i.e., additional categories of Personal Information about California residents Ace Hardware collects), and Privacy Policy. *See id.* Every link appears in blue, bolded, underlined text. The "TERMS OF USE" link is presented in all capital letters and is the first item in the list, making it particularly conspicuous.

**B. Plaintiffs' Interactions with the Website**

Pflaumer alleges that he "visited the Website in or about May 2025 for consumer browsing purposes," during which he "engaged with the cookie consent mechanism and declined all non-essential cookies." Compl. ¶ 15. Pflaumer also alleges that he "more recently visited the Website on February 25, 2026" and once more "us[ed] the Cookie Banner to decline all non-essential cookies." *Id.* During these Website visits, Pflaumer allegedly proceeded to browse the Website after clicking the Cookie Banner's "Necessary Cookies Only" button. *See id.* He alleges the Website disclosed his "browsing activity," "device identifiers," "pages and product information he chose to review," and "related metadata." *Id.* Pflaumer also alleges that he "reviewed product information regarding screwdrivers" but "has not made a purchase through the Website." *Id.*

Cummings alleges he visited the Website "in or about February 2026" and again "on February 24, 2026," and on both occasions "engaged with the cookie consent mechanism and declined all non-essential cookies" and proceeded to browse the Website. *Id.* ¶ 16. Cummings also alleges that he "maintains an account with [Ace] and has made purchases through the Website." *Id.* He does not allege that any purchase occurred during his February 2026 Website visits. Cummings alleges the Website disclosed his "browsing activity," "device identifiers," and "related metadata." *Id.* He does not allege any facts regarding how he specifically interacted with the Website during his February 2026 visits.

Rosenthal alleges he visited the Website "in or about January 2026" during which he "engaged with the cookie consent mechanism and declined all non-essential cookies" and browsed the Website. *Id.* ¶ 17. He also "uses [Ace's] mobile application." *Id.* Like Cummings, Rosenthal "maintains an account with [Ace]." *Id.* Rosenthal alleges the Website disclosed his "browsing activity," "device identifiers," and "related metadata." *Id.* Rosenthal also alleges that he "reviewed product information regarding barbecue-related products" but does not allege that he has made any purchases on the Website. *Id.*

Neither Pflaumer, nor Cummings, nor Rosenthal expressly and specifically alleges the collection or disclosure of any personal or sensitive information, specific webpages or URLs visited, or any other information shared with the Website.

## III. ISSUES TO BE DECIDED

A. Have Plaintiffs failed to plead an injury-in-fact to establish Article III standing?

B. Have Plaintiffs stated claims for: (1) the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; (2) intrusion upon seclusion; (3) common law fraud, deceit, and/or misrepresentation; and/or (4) unjust enrichment?

B. Has Pflaumer stated claims for: (1) invasion of privacy and violation of the California Constitution, Art. 1, sec. 1; (2) wiretapping in violation of CIPA § 631(a); (3) use of a pen register in violation of CIPA § 638.51; (4) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770, *et seq.*; and/or (5) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*?

## IV. LEGAL STANDARD

### A. Rule 12(b)(1): Standing

A complaint should be dismissed where the court lacks subject matter jurisdiction because the plaintiff lacks Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023). The plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Rule 12(b)(6): Failure to State a Claim

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## V. PLAINTIFFS LACK ARTICLE III STANDING.

None of Plaintiffs' theories of alleged harm—(i) a privacy interest in their information, (ii) "loss of control over their personal information," and (iii) diminishment of the value of their information—is a cognizable injury-in-fact. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016), *as revised* (May 24, 2016). Rather, "[a] plaintiff establishes an injury in fact when she shows that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo*, 578 U.S. at 339). They have not done so here.

### A. No Collection or Disclosure of Plaintiffs' Personal Information.

Plaintiffs cannot plead a concrete injury because they fail to allege that they shared any personal information with Ace (or any other third party). "To sufficiently allege an injury in fact, a plaintiff must identify the specific personal information [they] disclosed that implicates a protectable privacy interest." *In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (cleaned up) (citing *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025)). "[S]ince this is a class action, at least one of the named plaintiffs must have suffered an injury in fact." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). "To sufficiently allege an injury in fact and survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (finding no standing when plaintiff failed to specify personal information disclosed). Plaintiffs fail to do so.

While the Complaint devotes dozens of pages to third-party tracking technologies in the abstract, it contains virtually no factual allegations about what personal information ***Plaintiffs*** shared with the Website during their alleged visits. Plaintiffs do not allege that they themselves

entered any sensitive or even minimally personal information anywhere on the Website. They also fail to allege that they took any action on the Website other than "visit[ing] the Website . . . for consumer browsing purposes" and reviewing product information. At most, Plaintiff Pflaumer alleges that he "reviewed product information regarding screwdrivers," (*id.* ¶ 15), Plaintiff Cummings alleges that he "reviewed product information on the Website, (*id.* ¶ 16), and Plaintiff Rosenthal alleges that he "reviewed product information regarding barbecue-related products." (*id.* ¶ 17). Even in these interactions, Plaintiffs' allegations that they simply "reviewed" this information (*id.* ¶¶ 15, 17) demonstrate their failure to plead that they disclosed any personal information. Plaintiffs do not explain how any of this information could be "personal information" or even less so what Plaintiffs term "Sensitive Information." As there was no alleged collection of personal information, Plaintiffs do not allege the disclosure of personal information. *See e.g., Mikulsky v. Noom, Inc.* 682 F. Supp. 3d 855, 864-65 (S.D. Cal. 2023) (dismissing claims for lack of standing because failure to specify personal information precluded determination of whether it "is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest"). Accordingly, Plaintiffs have failed to sufficiently allege an injury in fact and their claims are subject to dismissal.

**B. <u>None of the Allegedly Collected Information is Actionable.</u>**

Even if Plaintiffs provided any information to the Website, as they allege, that is not actionable because Plaintiffs lack a legally protectable interest. Plaintiffs contend the Website transmitted "browsing activity, product views, and interaction data reflecting their interests" to third parties. *See* Compl. ¶ 11. These vague allegations resemble those that numerous courts in this circuit have found insufficient to plead concrete injury.

In *Popa v. Microsoft Corp.,* the Ninth Circuit recently ruled that a website capturing similar information as the one in this case did not result in the kind of highly offensive interferences or disclosures actionable at common law. *See Popa*, 153 F.4th 784, 791 (9th Cir. 2025). The Ninth Circuit made clear that "a court [must] assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system," and Article III standing is not conferred whenever a "privacy statute[]" is violated. *Id.* at 784, 791, 794. In *Popa*, a website

allegedly captured data about site visits, "organiz[ing] the information it captures into over 30 different categories," such as "device" information, "type of browser," "operating system," "mouse movement" and "screen swipes," "text inputted by the user," and "how far down a webpage a user scrolls." *Id.* at 786. But tracking such user interactions does not result in "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," including the torts of "intrusion upon seclusion" and "public disclosure of private facts." *Id.* at 791. There was no "embarrassing, invasive, or otherwise private information collected," as required to establish a cognizable injury. *Id.*

Courts under similar circumstances have routinely followed *Popa*. In *Maghoney v. Dotdash Meredith, Inc.,* there was no privacy interest in the plaintiff's "health-related searches typed into the Website" "related to symptoms, contraction, and the treatment of chlamydia" (among other information), or "page navigation history, and metadata associated with his site visit, including his [IP] address and device identifiers." 2026 WL 497402, at *2, 8 (S.D. Cal. Feb. 23, 2026). The court reasoned that "it is unclear how [p]laintiff became aware of the sharing of this information" since he did not "allege anyone directly contacted him related to his searches" or "that his searches were made publicly visible." *Id.* at *5. Similarly, in *Khamooshi v. Politico LLC*, the plaintiffs lacked a privacy interest in their "IP addresses, browser and device data, and 'other identifying information'" and thus lacked a concrete injury. *See* 2025 WL 2822879, at *4 (N.D. Cal. Oct. 2, 2025) (dismissing CIPA and other privacy claims). Other courts have recently followed suit in dismissing similar claims. *See, e.g.*, *In re USA Today*, 2026 WL 932655, at *2 (dismissing claims for lack of standing and noting no privacy interest in IP address, device type, or browser type); *Tash v. Vision Serv. Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) (same for "search parameters" when plaintiff failed to "identif[y] how the information transmitted was 'private'").

The rationale of these cases applies here. As to "device identifiers" and "related metadata," it is well-established that "internet users have no right to privacy . . . ." *See, e.g.*, *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025) (dismissing CIPA claims for lack of standing when website allegedly used "tracking beacons" to collect "[IP] address,"

"browser name [and] version," "geolocation data, email address, mobile ad IDs," "social media identities, . . . [and] cookies" because these data elements were simply constituted "metadata" for which "users have no right to privacy"). Plaintiffs also allege the collection of "pages," "product information," and "browsing activity," Compl. ¶¶ 15-17, but these allegations are specious. Plaintiffs do not specify any specific website pages they visited or specific products they viewed. Though Plaintiffs Pflaumer and Rosenthal specify merely categories of products whose information they viewed, they "do[] not allege anyone directly contacted [them] related to [their] searches," do not allege "that [their] searches were made publicly visible," "do[] not allege that any of [their] searches were directly linked to [their] name[s] or other personally identifiable information." *Maghoney*, 2026 WL 497402, at *5. At most, Plaintiffs Pflaumer and Rosenthal vaguely allege they "reviewed" "product information regarding screwdrivers" (*id.* ¶ 15) and "product information regarding barbecue-related products" (*id.* ¶ 17). These allegations fall woefully short of Plaintiffs' obligation to "identif[y] [any] embarrassing, invasive, or otherwise private information collected." *Popa*, 153 F.4th at 791.

Although Ace recognizes some courts have found standing in similar cases, *see, e.g.*, *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6-7 (N.D. Cal. July 14, 2025); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026), Plaintiffs' dearth of allegations regarding the collection or disclosure of their own information precludes any argument that the alleged harm would be actionable at common law.

### C. Plaintiffs Fail to Allege Their Information Diminished in Value.

Plaintiffs' conclusory allegations that the value of their private and personally identifiable information was diminished do not survive dismissal. To plead injury-in-fact, Plaintiffs must adequately allege "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)). That a plaintiff's information may have value for a defendant "cannot serve to establish that plaintiff has personally lost money or property" to support standing. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021). "[S]imply because a

plaintiff's information 'is valuable in the abstract,' and simply because a company 'might have made money from it,' that does not mean that the plaintiff has 'lost money or property as a result.'" *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Indeed, "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 930 ("When confronted with data privacy claims similar to the ones brought by Plaintiffs, courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information.").

Here, the Complaint does not contain a single allegation that Plaintiffs' data carries any value. In other words, Plaintiffs do not plausibly allege that their own information has value, "that they personally lost the opportunity to sell their information," or "that the value of their information was somehow diminished after it was collected by [a third party.]" *Id.* at 931-32. As Plaintiffs have not demonstrated the alleged "conduct resulted in some concrete and particularized harm, they have not articulated a cognizable basis for standing pursuant to Article III." *Id.* at 932. The Court's analysis can and should end here, and dismissal should be granted.

## VI. PLAINTIFFS' CIPA AND ECPA WIRETAPPING CLAIMS FAIL.

To plead a CIPA wiretapping, a plaintiff must allege that "(1) by means of a machine, instrument, or contrivance, [Ace] (2) willfully and without the consent of all parties (3) read, attempted to read, or to learn the contents or meaning of any communication, (4) while the communication was in transit (5) to or from any place in California." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843 (N.D. Cal. 2024) ("*Doe I*") (citing Cal. Penal Code § 631(a)). To plead an ECPA wiretapping violation, a plaintiff must allege that Ace "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *Id.* at 842; *see* 18 U.S.C. § 2511. Courts evaluate these claims together because the elements are similar. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021).

Plaintiffs do not adequately plead their CIPA and ECPA claims because the Complaint lacks well-pleaded facts that: (1) the "contents" of their communications were intercepted while

they were "in transit" to Ace; (2) Ace aided and abetted an alleged CIPA violation; and (3) Ace acted with a criminal or tortious purpose to exempt valid one-party consent under the ECPA.

**A. Plaintiffs Fail to Allege Interception of "Contents" while "In Transit."**

To plead "contents" under both CIPA and the ECPA, a plaintiff must allege the interception of "the substance, purport or meaning of [the] communication" rather than merely "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). But "[l]isting general categories of information that [p]laintiffs allege [] cookies are capable of collecting (without alleging such information was actually collected) does not suffice." *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *6 (N.D. Cal. May 21, 2026); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *7 (N.D. Cal. Jan. 27, 2026) ("The problem with plaintiffs' wiretapping claim is that plaintiffs do not specifically allege that *their* communications were intercepted by any third parties.").

Plaintiffs do not allege the "contents" of ***their*** communications were intercepted because they do not allege ***they*** ever inputted data on the Website (i.e., a substantive communication). *See* Compl. ¶¶ 15-17; *see also supra* Section V. And vaguely alleged website browsing information is not the type of person-to-person "communication" that CIPA or ECPA were enacted to protect. *See, e.g.*, *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (dismissing CIPA claim because "opening a webpage" is "not a communication with content"); *see also Zynga*, 750 F.3d at 1103 (amendments to ECPA focused on "electronic communications services," like "electronic messages, such as email" (citation omitted)). Further, Section V.A of the Complaint, which Plaintiffs purportedly devote to pleading "contents," sets forth no factual allegations about Plaintiffs' own communications with the Website. *See* Compl. ¶¶ 103-08. Because Plaintiffs fail to identify any "communications" allegedly intercepted by the "Tracking Entities," their wiretapping claims fail on this basis alone.

Plaintiffs' CIPA and ECPA claims also fail because Ace did not acquire any communication "in transit." *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). This element requires plausible allegations that the communication was "acquired during

transmission, not while it is in storage." *Id.*; *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("[T]he critical question . . . is whether . . . [the defendant] read one of [the] communications while it was still in transit, i.e., before it reached its intended recipient."); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("'While' is the key word here."). "Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting their data in transit." *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022).

As with the other elements of these claims, Plaintiffs' "in transit" allegations are conclusory and boilerplate. Plaintiffs assert a conclusion, without the support of well-pleaded facts, that the "Tracking Entities . . . intercepted, read, duplicated, and retransmitted users' data while it was in transit," and that the interception occurred "contemporaneously with Plaintiffs' interactions with the Website." Compl. ¶¶ 105, 107. But as in *Valenzuela*, these allegations "are just too conclusory to survive" because they do "little more than restate the pleading requirement of real time interception." 674 F. Supp. 3d at 758. Plaintiffs must explain "how such code might plausibly work" and provide more "detail as to how the interception occurs" in order to show the alleged interception was contemporaneous. *Id.* at 758. In any event, because the Complaint lacks any details about Plaintiffs' own purported communications, it consequently fails to plausibly allege how Plaintiffs' own communications could have been intercepted in transit. This too warrants dismissal.

**B. Pflaumer Fails to Allege Aiding and Abetting Liability for His CIPA Claim.**

The fourth clause of 631(a) applies when a defendant "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). "The Ninth Circuit has also explicitly rejected the concept of secondary liability under ECPA." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026) (citations omitted). Ace respectfully asks this Court to follow the other courts that, for aiding and abetting liability, require a website operator to have "both knowledge of the conduct that will violate the statute ***and a purpose of aiding, agreeing with, or employing the third party to commit those acts***." *Smith v.*

*YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis added).

**1. Ace had no intent to unlawfully wiretap.**

To the extent Plaintiffs allege Ace intended to violate Section 631(a), their allegations are insufficient. In *Esparza v. UAG Escondido A1 Inc.*, the plaintiff alleged an aiding and abetting theory because defendant embedded a third-party's chat software onto its website. *See* 2024 WL 559241, at *1 (S.D. Cal. Feb. 12, 2024). The court held that simply alleging a website operator knowingly implemented certain software was insufficient to establish aiding and abetting under clause four. *Id.* at *6*; see also Smith v. YETI Coolers, LLC*, 2025 WL 877127, *1 (N.D. Cal. Mar. 14, 2025) (dismissing and finding allegations of knowledge of third party software on the website to "collect[] consumers' sensitive information" were "insufficient to support a plausible inference that [d]efendant knowingly agreed with or employed [the software provider] to engage in conduct that violated the wiretapping statute.").

Plaintiffs allege that Ace willfully aided and abetted the "Tracking Entities" by "embed[ding] and configur[ing] the Tracking Tools in its Website, in a manner that enabled the Tracking Entities to intercept the contents of Plaintiffs' communications with the Website." Compl. ¶ 110. However, Plaintiffs also allege that Ace used the Cookie Banner to disclose cookies and provide options to customize the Website experience. *See* Compl. ¶ 2. Plaintiffs' allegations confirm Ace did *not* intend to aid the surreptitious collection of communications. At best, the Complaint suggests that the alleged failure of the "Necessary Cookies Only" button was a good faith mistake.

**2. The "Tracking Entities" had no intent to unlawfully wiretap.**

Plaintiffs failed to plead that the "Tracking Entities" have the predicate liability necessary for aiding and abetting. As set forth above, the first clause of section 631(a) fails when applied to internet communications. There is no underlying violation of the second clause because the "Third Parties" lack the requisite intent.

Alleging a website operator allows third-party cookies to operate on its website does not mean those third parties intended to commit an unlawful wiretap. *See, e.g.*, *B.K. v. Desert Care Network.*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (rejecting arguments that Meta

"intentionally received and used user data" from the defendants because plaintiffs "d[id] not allege that Meta knew or should have known that the data it received from [d]efendants was collected without users' consent"). On the other hand, in *Wilson v. Google LLC*, a court denied a motion to dismiss where the complaint alleged the defendant "***intentionally encourage[d]***' website operators to use its tools in a way that circumvents users' privacy settings." 2025 WL 901941, at *6 (N.D. Cal. Mar. 25, 2025) (emphasis added). The Complaint lacks allegations that Ace affirmatively encouraged any third party to circumvent Cookie Banner preferences; rather Plaintiffs simply allege the Cookie Banner did not operate as intended. Plaintiffs fail to state a claim for aiding and abetting liability under the fourth clause.

**C. The "Tracking Entities'" Consent Defeats Plaintiffs' ECPA Claim.**

ECPA has a "one-party consent" rule, and there can be no ECPA violation if "one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(d). "[T]he consent of one party is a complete defense to a Wiretap Act claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). "Congress intended the consent requirement to be construed broadly." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025). Here, Plaintiffs' own allegations illustrate that the "Tracking Entities" consented to Plaintiffs' alleged communications. According to the Complaint, Ace's alleged use of third-party tools "is performed pursuant to commercial agreements between Defendant and third parties, including Tracking Entities." Compl. ¶ 38. By entering into these agreements, through which Ace purportedly "integrated Tracking Tools from various Tracking Entities into its Website's programming" (*id.*) the Tracking Entities consented to receiving communications from Website visitors like Plaintiffs. It is of no moment that "Plaintiffs were never asked to consent." Compl. ¶ 163.

It is well-established that a website operator's use of technologies like those alleged in the Complaint constitutes, under the ECPA, consent from that operator to the data collection at issue. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing claim because "Defendant's customers must have chosen to deploy Oracle's tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites

themselves—gave 'prior consent.'"); *Doe I,* 741 F. Supp. 3d at 842 (dismissing ECPA claim because "[t]he alleged interception . . . only occurs because the health care providers choose to install Google source code on their web properties" which "must mean the providers consented to the operation of Google source code"). Accordingly, these allegations defeat Plaintiffs' ECPA claim.

Therefore, the only theory under which Plaintiffs can pursue their ECPA claim—and invalidate the "Tracking Entities'" consent—is under the ECPA's "crime-tort" exemption. Courts apply the crime-tort exemption where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (quoting 18 U.S.C. § 2511(2)(d)). As this Court recently noted, "the crime-tort exception is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026) (Davila, J.) (dismissing claim).

Plaintiffs' shortcoming in ostensibly invoking this exemption is that their Complaint neither cites to nor discusses it. To the extent the Complaint possibly alludes to this exemption in passing, its lone allegation falls short. Plaintiffs allege that their communications were shared with the "Tracking Entities" "for the unlawful purpose of monetizing the Plaintiffs' intercepted information, including for combining that information with information collected about Plaintiffs from across the internet and used for advertising, analytics, and marketing optimization." Compl. ¶ 160. But this allegation falls squarely within the primary motivation of monetization scenario that this Court found insufficient to trigger the exemption. Thus, even accepting this allegation as true, it fails to plausibly allege that Ace acted with the purpose "to injure [P]laintiffs tortiously." Accordingly, the crime-tort exception does not apply, and Plaintiffs' ECPA claim should be dismissed.

## VII. <u>PFLAUMER'S CIPA PEN REGISTER CLAIM FAILS.</u>

Pen registers track every outbound number that a telephone dials and trap and trace devices record every inbound number that a telephone receives by using electronic impulses to

reveal the telephone number. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006). Plaintiffs allege that the "Tracking Tools" are pen registers because "[t]he IP addresses, detailed URLs, cookies, and Pixel IDs disclosed through the use of the Tracking Tools identify: (i) the source and destination of incoming signals to Plaintiffs' devices to the Tracking Entities; and (ii) the source and destination of outgoing signals from Plaintiffs' devices." Compl. ¶ 117. This theory fails.

**A. The Statute's Plain Language Excludes Website Tracking Technology.**

Numerous California courts have held that the online tracking technology alleged here does not fall within Section 638.51. *Schallert v. Palo Alto Networks, Inc.* rejected a broader interpretation, sustaining a demurrer to a pen register claim without leave to amend. *See* 2026 WL 754028, at *3 (Cal. Super. Ct. Mar. 06, 2026). The court emphasized that no "binding[] California authority" was before the court "holding that [] CIPA applies to websites." *Id.* at *1. Indeed, no such authority exists. CIPA's pen register provisions (i.e., Section 638.51 and its accompanying provisions), "[c]onstrued together . . . limit the scope of a trap and trace device to telephone lines." *Id.* at *2. The California Court of Appeal (Second District) is expected to soon clarify this issue in *Sean Rose v. Variety Media, LLC*, No. B350578, a pending pen register demurrer appeal.

**B. The Statute's Legislative History Excludes Website Tracking Technology.**

A.B. 929's legislative history underscores that the California legislature did not intend the statutes to apply to websites collecting IP addresses. A.B. 929 does not mention IP addresses or imply they are within the bill. *See* RJN, Danaher Decl., Ex. B, Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015). Instead, the Legislative Counsel's Digest states that A.B. 929 "would clarify that any location information obtained by a pen register or a tra[p] and trace device is limited to the information that can be determined from the ***telephone number***." RJN, Danaher Decl., Ex. A, at 1 (emphasis added); *see also id.*, Danaher Decl., Ex. B, at 11 ("Pen registers and track and trace devices generally track incoming and outgoing ***telephone calls***." (emphasis added)). The legislative

history does not suggest the bill was intended to apply to websites or the collection of IP addresses or "user-agent information." And, given that A.B. 929 was enacted ***in 2015***, the Legislature was aware of IP addresses or internet communications. Plaintiffs' invocation of CIPA's preamble language, *see* Compl. ¶ 163, does not extend the statute to websites and the internet.

Though some other courts have held differently regarding Section 638.51's scope, *see, e.g.*, *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Motorola*, 2025 WL 1939957, at *11-13, Ace respectfully urges this Court to follow those courts that have appropriately employed a narrower interpretation absent relevant binding authority.

**C. The Pen Register Statute Does Not Encompass the "Tracking Tools."**

Even if the pen register statute applies to website tracking technology, Pflaumer fails to allege that the statute applies here. CIPA's plain text defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis added). But that is not what Pflaumer alleges.

The Complaint claims the "Tracking Tools" are "pen registers" because "IP addresses, detailed URLs, cookies, and Pixel IDs disclosed through the use of the Tracking Tools" allegedly "identify" incoming and outgoing signals from Pflaumer's device. Pflaumer further alleges that these technologies are "designed to capture phone numbers, email addresses, routing information, addresses, and other signaling information of website users." Compl. ¶ 204.

Pflaumer has pled himself out of a pen register claim. As set forth above, a pen register captures "dialing, routing, addressing, or signaling information, ***but not the contents of a communication***." Cal. Penal Code § 638.50(b) (emphasis added). Yet, Pflaumer still alleges the "Tracking Tools" capture information such as "detailed URLs," which fall well outside the scope of the pen register's statute. *See Mike Goldstein v. Rumble Inc.*, 2026 WL 1406766, at *5 (C.D. Cal. Apr. 24, 2026) ("Several other courts in the Ninth Circuit have concluded that 'detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications'" (citation omitted)). Moreover, Pflaumer alleges that these same

"Tracking Tools" "intercept and transmit the content of users' communications with the Website." Compl. ¶ 96. Pflaumer's failure to allege that the "Tracking Tools" capture only non-content information dooms his pen register claim. *See Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 852 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) ("Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply."); *see also Tsering v. Meta Platforms, Inc.,* 2026 WL 89320, *6 (N.D. Cal. Jan. 12, 2026) (dismissing pen register claim based on alleged collection of "unique device identifiers" and other "personal data," because plaintiffs insufficiently alleged "this information is used for 'dialing, routing, addressing, or signaling'").

**VIII. <u>PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL.</u>**

Plaintiffs fail to state intrusion upon seclusion or invasion of privacy claims. Courts consider these claims together. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Courts first ask whether the complaint alleges the defendant "'***intentionally intrude[d]***, physically or otherwise, upon the solitude or seclusion of another." *Shulman v. Group W Productions, Inc.*, 955 P.2d 469, 490 (Cal. 1998) (emphasis added). Second, courts determine whether the invasion of privacy is "sufficiently serious in nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms*** underlying the privacy right." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (emphasis added).

**A. Plaintiffs' Allegations Preclude a Reasonable Expectation of Privacy.**

As set forth above, *supra* Section V.A, Plaintiffs do not allege they provided any of their information (including personal information) on the Website or that Ace collected any private information about them. Thus, there can be no violation. And, to the extent Plaintiffs premise their claims based on their subsequent visits to the Website "in connection with the investigation of this case" (Compl. ¶¶ 15-17), they lacked any degree of a reasonable expectation of privacy.

**B. The Disclosure of Plaintiffs' Basic Information is Not Highly Offensive.**

The information would not be "highly offensive" if intercepted. The Complaint alleges disclosure of Plaintiffs' "browsing activity," "device identifiers," "pages," and "product

information." Compl. ¶¶ 15-17. Disclosure of these data elements is not "highly offensive." *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same for browsing history); *Hammerling*, 615 F. Supp. 3d at 1089 (same for geolocation information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device identification number, geolocation information). "Even disclosure of very personal information"—which is ***not*** present here—"has not been deemed an egregious breach of social norms sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).

**C. Plaintiffs Fail to Allege Ace Committed an Intentional Invasion of Privacy.**

The Complaint does not (and cannot) allege intentional conduct. Instead, Plaintiffs allege cookies were placed due to defects in the "Necessary Cookies Only" button rather than by intentional conduct. *See* Compl. ¶ 125 ("Even after users rejected non-essential cookies, Defendant continued deploying Tracking Tools that intercepted users' interactions with the Website and transmitted those communications and identifiers to third-party tracking companies."). These claims fail because they rely on an alleged error. *See Shulman*, 955 P.2d at 490 (noting defendant must have "intentionally intrude[d]"); Judicial Council of California Civil Jury Instruction (CACI) No. 1800; Intrusion into Private Affairs (2026 edition) ("To establish that [defendant] violated [plaintiff's] right to privacy . . . [plaintiff] must prove all of the following: . . . That [defendant] ***intentionally intruded***." (emphasis added)).

Plaintiffs may rely on decisions in similar cookie banner lawsuits that have not dismissed similar claims at the pleading stage to argue that the Cookie Banner misrepresentation is "a kind of 'plus' factor that is significant in making a privacy intrusion especially offensive." *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025). Ace respectfully disagrees. An intrusion or invasion must be so "serious in nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Heeger*, 509 F. Supp. 3d at 1193. Even if there was an inadvertent misconfiguration, Plaintiffs still fail to allege

any intrusion as to ***their own*** information or that such an intrusion extended to tracking across other websites. *See Ortiz v. Foris Dax, Inc.* 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026) (rejecting "plus factor" analysis because "[p]laintiffs do not allege tracking by [defendant] that extends beyond [p]laintiffs' activities on its website"). Plaintiffs fail to satisfy either prong of the combined inquiry, and each claim fails.

## IX. PLAINTIFFS' FAILURE TO ALLEGE THE INADEQUACY OF LEGAL REMEDIES PRECLUDES THEIR CLAIMS FOR EQUITABLE RELIEF.

Plaintiffs' requests for equitable relief all fail because Plaintiffs fail to allege they lack an adequate remedy at law. "District courts have equitable jurisdiction under federal common law only if the plaintiff has no adequate legal remedy." *Escobar v. Hershey Co.*, 2026 WL 1303061, at *8 (N.D. Cal. May 12, 2026) (Davila, J.) (citing *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022)). "For this reason, courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Id.* (citation omitted). Plaintiffs have not done so here.

Equitable claims must be dismissed where: (1) "the operative complaint does not allege that [plaintiff] lacks an adequate legal remedy," or (2) the plaintiff alleges legal claims seeking monetary damages for the same amount as equitable restitution. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Here, Plaintiffs purport to seek equitable relief, *see* Compl. ¶¶ 175, 186, 219, 231, 245, Prayer ¶¶ e, i, yet the Complaint is devoid of any allegations that Plaintiffs lack an adequate remedy at law. *See generally* Compl. "[S]ince Plaintiffs have not pled that they lack an adequate remedy at law, all their equitable claims, including those for restitution and prospective injunctive relief, fail." *Browning v. Am. Honda Motor Co., Inc.*, 549 F. Supp. 3d 996, 1014 (N.D. Cal. 2021).

## X. PFLAUMER'S CLRA AND UCL CLAIMS FAIL FOR ADDITIONAL REASONS.

Pflaumer's CLRA and UCL claims also fail because of Pflaumer's other pleading deficiencies. Pflaumer lacks standing to bring either statutory claim, as Pflaumer fails to allege damages under either statute and is not a "consumer" under the CLRA. Second, Pflaumer failed to provide Ace the required pre-suit CLRA notice and attach a venue affidavit to the Complaint.

These pleading failures are fatal.

**A. Pflaumer Lacks Statutory Standing to Bring His UCL and CLRA Claims.**

**1. Pflaumer Fails to Allege Cognizable Harm.**

"To satisfy the UCL's standing requirements, a plaintiff must (1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim." *King v. Conde Nast Pubs.*, 2012 WL 3186578, at *5 (C.D. Cal. Aug. 3, 2012). Likewise, standing under the CLRA requires a showing that the consumer "suffer[ed] [] damage as a result . . . of the method, act or practice declared to be unlawful." Cal. Civ. Code § 1780(a) (emphasis added). Pflaumer fails to satisfy the requisite showing under either statute.

As to his UCL claim, Pflaumer makes the conclusory assertion that he "suffered damages, including loss of privacy, loss of control over [his] personal information, and diminution in the value of [his] personal data." Compl. ¶ 243. Pflaumer does not plead any specific factual allegations regarding a loss of money or property, which is fatal to his claim. Even if Pflaumer alleges his data has any value (which he does not) or that he made a purchase from Ace, "just because [Pflaumer's] data is valuable in the abstract, and because [Ace] might have made money from it, does not mean that [Pflaumer] ha[s] 'lost money or property' as a result." *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *10 (N.D. Cal. Apr. 21, 2026) (citation omitted); *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025) ("Plaintiffs . . . must allege something beyond the untethered insistence that they would not have bought the products had they known the truth of [d]efendants' data collection policies."). In any event, Pflaumer does not tie any of his alleged harm to Ace aside from merely alleging it occurred "[a]s a direct and proximate result of [Ace's] fraudulent conduct" during merely two alleged Website visits. Compl. ¶¶ 15, 243. This conclusory allegation is not enough. *See Ng v. US Bank, NA*, 2016 WL 5390296, at *7 (N.D. Cal. Sept. 26, 2016) (dismissing UCL claim for lack of statutory standing when plaintiff only alleged injury occurred "[a]s a direct and proximate cause of the acts of the named Defendants.").

Pflaumer's CLRA damages allegations fare no better. Pflaumer merely alleges that he "seek[s] all available relief for [Ace's] use of unfair acts or practices, including injunctive relief." Compl. ¶ 219. Yet, the Complaint does not contain any allegations that these damages occurred "as a result" of Ace's alleged conduct. *See* Cal. Civ. Code § 1780(a). Though this deficiency alone is fatal, Pflaumer also fails to plead specific damages that may have resulted from Ace's alleged unlawful practice. *See Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299 (2009) (noting that under CLRA, "not only must a consumer be exposed to an unlawful practice, but some kind of damage must result"). Accordingly, he has not suffered cognizable harm under either statute.

**2. Pflaumer Fails to Allege that He is a "Consumer" Under the CLRA.**

Pflaumer also lacks standing to bring his CLRA claim because he has not alleged that he is a "consumer." Under the CLRA, a "consumer" is "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purpose." Cal. Civ. Code § 1761(d). Only a "consumer" may assert a CLRA claim. *See Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). While Pflaumer alleges he merely "***reviewed*** product information regarding screwdrivers" (Compl. ¶ 15 (emphasis added)), he does not allege that he purchased any good or service or even visited the Website with the intention of making such a purchase. "It is not enough that the plaintiff is a consumer of just any goods or services; rather, the plaintiff must have acquired or attempted to acquire the goods or services in the transaction at issue" to be a consumer for CLRA purposes. *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *4 (C.D. Cal. May 23, 2007), *aff'd*, 387 F. App'x 696 (9th Cir. 2010). This deficiency also precludes Pflaumer's claim.

Consequently, Pflaumer lacks standing to bring his UCL and CLRA claims.

**B. Pflaumer's CLRA Claim also Fails for Lack of Notice and Venue Affidavit.**

Regardless, the Court should dismiss Pflaumer's CLRA claim because he failed to comply with the statute's requirements.

**1. Pflaumer Failed to Provide Pre-Suit Notice.**

Pflaumer's CLRA claim also fails because he never provided Ace with the required statutory notice. "The CLRA requires that a plaintiff file, 'concurrently with the filing of the

complaint, . . . an affidavit stating facts showing that the action has been commenced in a' proper venue. (Cal. Civ. Code, § 1780(d).) *Higginson v. Kia Motors Am., Inc.*, 341 Cal. Rptr. 3d 732, 762 (Cal. Ct. App. 2026), *review denied* (Apr. 29, 2026) (quoting Cal. Civ. Code § 1780(d)).

Courts in this circuit have explained that the CLRA's notice provision is required to state a claim and is strictly construed. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007); *Herron v. Best Buy Stores, Ltd.*, 2014 WL 2462969, at *2 (E.D. Cal. May 29, 2014). The CLRA's "purpose may only be accomplished by a literal application of the notice provisions." *Outboard Marine Corp. v. Super. Ct.*, 124 Cal. Rptr. 852, 859 (Cal. Ct. App. 1975), *superseded by statute on other grounds Flores v. Southcoast Auto. Liquidators, Inc.*, 226 Cal. Rptr. 3d 12, 19 (Cal. Ct. App. 2017). In fact, California's model jury instructions require the plaintiff to prove that "she" provided the requisite notice to the defendant and further specify that the plaintiff "must have complied exactly with these notice requirements and procedures." Judicial Council of California Civil Jury Instructions, Instruction § 4701 (Consumers Legal Remedies Act— Notice Requirement for Damages).

Here, the Complaint lacks any allegation that Pflaumer provided Ace the required pre-suit notice, confirming his failure to comply with the CLRA's strict requirements. Pflaumer's failure to include this critical allegation is fatal to his CLRA claim. *See, e.g.*, *Cattie*, 504 F. Supp. 2d at 949 (dismissing CLRA claim with prejudice because it is unfair to permit plaintiffs to circumvent notice requirement).

**2. Pflaumer Failed to Provide a Venue Affidavit.**

The Court must also dismiss the CLRA claim because Pflaumer did not attach the required venue affidavit to the Complaint. Under the CLRA, a plaintiff must file an affidavit showing that "the action has been commenced in a county" that meets the statute's venue requirements. Cal. Civ. Code § 1780(d); *see also In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing CLRA claims because plaintiffs failed to file venue affidavit with complaint). Here, Pflaumer has failed to file such a venue affidavit, requiring dismissal of the CLRA claim without prejudice. Cal. Civ. Code § 1780(d).

## XI. PLAINTIFFS FAIL TO PLEAD FRAUD DAMAGES.

Plaintiffs' fraud claim fails due to their failure to allege any actionable damages. Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance ***and resulting damage***." *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009) (emphasis added).

Plaintiffs' alleged fraud damages boil down to "loss of privacy, loss of control over their personal information, and diminution in the value of their personal data." Compl. ¶ 243. In similar cases, such allegations are insufficient to allege damages. For example, in *Hubbard v. Google LLC*, the plaintiffs alleged that Google collected and used data from YouTube users to generate advertising revenue, that "there is a market for consumers to monetize [p]ersonal [i]nformation," and "published analyses and studies have placed a value in excess of $200 on an individual's [p]ersonal [i]nformation." 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024). The court found that "[p]laintiffs do not allege sufficient facts from which the Court may reasonably infer that [d]efendants' misappropriation reduced the value of [p]laintiffs' information" and an "explanation as to how does not appear so obvious that the Court may simply infer one." *Id.*; *see also Dollar Tree*, 2025 WL 2939229, at *20 (N.D. Cal. Oct. 16, 2025) (dismissing claim for lack of actual damages in similar lawsuit when "[p]laintiffs have not plausibly alleged that they would either sell their data or pay anything to protect their data"); *Griffith v. TikTok, Inc.,* 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) ("In the absence of allegations that [p]laintiff incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury.").

Because Plaintiffs do not allege that they paid anything to browse the Website, they fail to allege "resulting damages."

## XII. PLAINTIFFS FAIL TO PLEAD ACE UNJUSTLY RETAINED ANY BENEFIT.

Generally, "there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[t]he Ninth Circuit has explained that '[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.'" *Rabin v. Google LLC*, 2023 WL 4053804,

at *12 (N.D. Cal. June 15, 2023) (quoting *Astiana*, 783 F.3d 753, 762 (9th Cir. 2015)). "To adequately allege unjust enrichment as a quasi-contract claim for restitution, 'a plaintiff must show that the defendant received and unjustly retained benefit at the plaintiff's expense.'" *California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024).

Plaintiffs claim that Ace "obtained a benefit by collecting, processing, and enabling third-party monetization of Plaintiffs' and the Nationwide Class Members' Sensitive Information, which Defendant then used to increase the effectiveness of advertising, marketing, and sales and to generate revenue." Compl. ¶ 248. But Plaintiffs' pleading deficiencies directly undercut this allegation. Ace cannot retain a benefit from Plaintiffs' information if Plaintiffs do not allege they actually provided Ace any information that Ace could retain, such as personal information or even non-personal information communicated via a search query or form field. As such, Plaintiffs' failure to allege what information of ***Plaintiffs*** was disclosed to Ace or any other third party or that Ace obtained a benefit from it is fatal to this claim.

## XIII. CONCLUSION

For the foregoing reasons, Ace respectfully requests that the Court dismiss Plaintiffs' claims.

Dated: June 17, 2026

DLA PIPER LLP (US)

By: */s/ David Horniak*
David Horniak

*Attorneys for Defendant*
Ace Hardware Corporation