**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
115 Broadway, 5th Floor
New York, NY 10006
(646) 347-3940

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky (admitted *pro hac vice)*
ek@zlk.com
33 Whitehall Street, 27th Floor
New York, NY 10004
(212) 363-7500

***Attorneys for Plaintiffs and the Proposed Class***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT PFLAUMER, HANS CUMMINGS, and MARK ROSENTHAL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACE HARDWARE CORPORATION,<br><br>Defendant. | Case No.: 5:26-CV-02151-EJD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ACE HARDWARE CORPORATION'S MOTION TO DISMISS WITH MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: September 10, 2026<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila<br>Courtroom: Courtroom 4<br>San Jose Courthouse<br>280 South First Street, 5th Fl.<br>San Jose, CA 95113<br><br>Complaint Filed: March 12, 2026 |

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

LEGAL STANDARD ..............................................................................................................3

ISSUES TO BE DECIDED .....................................................................................................4

ARGUMENT ..........................................................................................................................4

I. Plaintiffs Have Suffered Concrete Injuries, Establishing Article III Standing ......................4

A. The Unauthorized Interception, Transmittal, and Use of Plaintiffs' Sensitive Information Is a Highly Offensive Intrusion ......................................................4

B. Plaintiffs Have Adequately Alleged Deprivation of Control and Diminishment of the Value of Their Sensitive Information ......................................................8

II. Plaintiffs Have Stated Claim Under the Federal Wiretap Act and CIPA ..............................9

A. Plaintiffs Adequately Plead Interception of Contents of Communications in Transit....10

B. Plaintiff Pflaumer Has Adequately Pled Aiding and Abetting Under CIPA § 631(a)....12

C. The Wiretap Act's Crime-Tort Exception Applies and Defeats the One-Party Consent Safe Harbor ..........................................................................................15

D. Plaintiff Pflaumer Has Adequately Pled a Claim Under Cal. Penal Code § 638.51.......16

III. Plaintiffs Have Stated Claims for Intrusion Upon Seclusion and Plaintiff Pflaumer Has Stated a Claim Under Article 1, Section 1 of the California ..........................................19

A. Plaintiffs' Allegations Establish a Reasonable Expectation of Privacy..........................19

B. Plaintiffs Adequately Plead a Highly Offensive Intrusion ...........................................19

IV. Plaintiffs' Claims for Equitable Relief Sufficiently Allege Inadequacy of Available Remedy at Law .........................................................................................21

V. Plaintiff Pflaumer Has Stated Claims Under the UCL and CLRA.....................................22

A. Plaintiff Pflaumer Has Alleged Cognizable Harm Sufficient to Confer Standing Under the UCL and CLRA ..................................................................................22

B. Plaintiff Pflaumer Is a "Consumer" Under the CLRA..................................................23

C. Plaintiff Pflaumer's CLRA Claim Is Not Disposed of Via Technical Defects...............23

VI. Plaintiffs Have Stated a Claim for Common Law Fraud ....24

VII. Plaintiffs Adequately Plead Unjust Enrichment ....25

CONCLUSION ....25

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024)....................22

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)....................25

*Allison v. PHH Mortg.*,
No. 25-cv-05323-RFL, 2026 U.S. Dist. LEXIS 107416 (N.D. Cal. May 14, 2026)....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024)....................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................19

*Brown v. Google LLC*,
No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021)....................22

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023)....................14

*Caldwell v. InMobi Pte., Ltd.*,
No. 25-cv-09977-AMO, 2026 U.S. Dist. LEXIS 94801 (N.D. Cal. Apr. 29, 2026)....................15

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)....................4

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019)....................23

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025)....................17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................12

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024)....................14

*D'Antonio v. CNN, Inc.*,
No. 24 CV 3132 (VM), 2026 U.S. Dist. LEXIS 78088 (S.D.N.Y. Apr. 9, 2026) ....5

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*,
956 F.3d 589 (9th Cir. 2020) ....4, 8, 11, 15, 18, 19, 20, 25

*Doe 1 v. AOL, LLC*,
719 F. Supp. 2d 1102 (N.D. Cal. 2010) ....24

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....13

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) ....17

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ....11

*Edwards v. Mubi, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) ....23

*Escobar v. Hershey Co.*,
No. 24-cv-06844-EJD, 2026 U.S. Dist. LEXIS 105150 (N.D. Cal. May 12, 2026) ....20

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ....25

*Franklin v. Gwinnett Cty. Pub. Sch.*,
503 U.S. 60 (1992) ....21

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....4, 7, 12, 17, 24, 25

*Garcia v. Anschutz Ent. Grp., Inc.*,
No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026) ....4, 6, 7, 17

*Gianne v. Accor Mgmt. US Inc.*,
No. CV 25-2425-DMG (Ex), 2026 U.S. Dist. LEXIS 75987 (C.D. Cal. Mar. 31, 2026) ....9, 13

*Gibson v. Jaguar Land Rover N. Am.*,
No. CV 20-00769-CJC(GJSx), 2020 U.S. Dist. LEXIS 168724 (C.D. Cal. Sep. 9, 2020) ....21

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907 (N.D. Cal. Jan. 6, 2026) ....4, 6, 7

*Gladstone v. Amazon Web Servs.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ....13

*Goldstein v. Rumble Inc.*,
No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489 (C.D. Cal. Apr. 24, 2026) ....11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................17, 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................20

*Harris v. iHeartMedia, Inc.*,
No. 25-cv-06038-EKL, 2026 U.S. Dist. LEXIS 23256 (N.D. Cal. Jan. 29, 2026) ....................5, 6

*Hassid v. Alex & Ani, LLC*,
816 F. Supp. 3d 1196 (C.D. Cal. 2026)....................6

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................24

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024)....................9, 14, 19

*Hernandez v. Hillsides, Inc.*,
97 Cal. Rptr. 3d 274, 211 P.3d 1063 (2009)....................18

*Higginson v. Kia Motors Am., Inc.*,
341 Cal. Rptr. 3d 732 (2026)....................24

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015)....................8

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014)....................20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................20

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....................22, 23

*In re TikTok, Inc.*,
No. MDL 3144-GW-RAOx, 2025 U.S. Dist. LEXIS 218421 (C.D. Cal. Nov. 5, 2025)....................22

*In re Vizio*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)....................20

*In re Zoom Video Communs. Inc. Privacy Litig.,*
525 F. Supp. 3d 1017 (N.D. Cal. 2021)....................23

*India Price v. Carnival Corporation*,
712 F.Supp.3d 1347 (S.D. Cal. 2024) ....................19

*J.S. v. Spring Fertility Holdings, LLC*,
No. 5:24-cv-07374-EJD, 2026 U.S. Dist. LEXIS 117312 (N.D. Cal. May 27, 2026) ..................15, 16

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)..........................................................................................10

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ............................................14

*Johnson v. Trumpet Behavioral Health, LLC*,
No. 3:21-cv-03221-WHO, 2022 U.S. Dist. LEXIS 3706 (N.D. Cal. Jan. 7, 2022) ...........................21

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) .........................7, 8

*Krzyzek v. Openx Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026)..............................................................5, 6, 7, 14, 15, 17

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ..........................................................................................14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012).........................................................................................20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .........................................................................................................................3

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-cv-2394-AJB-BJW, 2026 U.S. Dist. LEXIS 36704 (S.D. Cal. Feb. 23, 2026).........................6

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)...........................................................................................15

*Mitchener v. Curiositystream, Inc.*, 815 F. Supp. 3d 845 (N.D. Cal. 2025)...........................................................................7, 8, 18

*Nordberg v. Trilegiant Corp.*,
445 F. Supp. 2d 1082 (N.D. Cal. 2006).........................................................................................23

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016).........................................................................................20

*Ortiz v. Foris Dax, Inc.*,
No. 25-cv-08950, 2026 U.S. Dist. LEXIS 113330 (N.D. Cal. May 21, 2026) ............................10, 11

*Patel v. Facebook*,
932 F.3d 1264 (9th Cir. 2019) ..........................................................................................................4

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) ..............4, 7, 8, 25

*Pereda v. GM LLC*,
No. 21-cv-06338-JST, 2022 U.S. Dist. LEXIS 242771 (N.D. Cal. Dec. 9, 2022)....21

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....5

*Reyes v. Just Born, Inc.*,
729 F. Supp. 3d 971 (C.D. Cal. 2024)....24

*Reynolds v. Spears*,
93 F.3d 428 (8th Cir. 1996)....15

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)....15

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024)....11

*Rodriguez v. Autotrader.Com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025)....11

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-00225-AJB-KSC, 2025 U.S. Dist. LEXIS 216362 (S.D. Cal. Nov. 3, 2025)....7

*Roney v. Miller*,
705 F. Appx. 670 (9th Cir. 2017)....25

*Rotkiske v. Klemm*,
589 U.S. 8, 13 (2019)....16

*Rusow v. SkinSpirit Essential LLC*,
No. 24-cv-09317-CRB, 2025 U.S. Dist. LEXIS 276390 (N.D. Cal. Oct. 15, 2025)....20

*Sargent Fletcher, Inc. v. Able Corp.*,
3 Cal. Rptr. 3d 279 (Ct. App. 2003)....16

*Schallert v. Palo Alto Networks*,
2026 Cal. Super. LEXIS 24039 (Cal. Super. Ct. Mar. 6, 2026)....16

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026)....6, 19

*Smart v. Main Line Health*,
No. 22-5239, 2026 U.S. Dist. LEXIS 81515 (E.D. Pa. Apr. 14, 2026)....16

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025)....19

*Smith v. YETI Coolers*, LLC,
754 F. Supp. 3d 933 (N.D. Cal. 2024)....12

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................20, 21

Stark v. Patreon, Inc.,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ....................22

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ....................15

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*,
No. 25-cv-06213-EKL, 2026 U.S. Dist. LEXIS 130851 (N.D. Cal. June 11, 2026) ....................3

*Thornton v. Micro-Star Int'l Co.*,
No. 2:17-cv-03231-CAS-AFMx, 2018 U.S. Dist. LEXIS 181912 (C.D. Cal. Oct. 23, 2018) ....................22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................3

*Tsering v. Meta Platforms, Inc.*,
U.S. Dist. LEXIS 5762 (N.D. Cal. Jan. 12, 2026) ....................18

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................14

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ....................14

*Vishal Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................17

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) ....................4, 13

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ....................12, 13, 14

**Statutes**

18 U.S.C. § 2511(1) ....................9, 14

Cal. Bus. & Prof. Code § 17200 ....................22

Cal. Civ. Code § 1761(d) ....................23

Cal. Civ. Code § 1770 ....................22

Cal. Civ. Code § 1780(d) ....................23

Cal. Civ. Code § 1782(a) ....................23

Cal. Civ. Code § 1782(d) ....................24

Cal. Penal Code § 631 .......... 9
Cal. Penal Code § 631(a) .......... 9, 12
Cal. Penal Code § 638.50(b) .......... 17
Cal. Penal Code § 638.51 .......... 16
CIPA § 631(a) .......... 16
CIPA § 638.51 .......... 17
CIPA ¶ 638.51 .......... 18
CIPA 631(a) .......... 14

**Rules**

Fed. R. Civ P. 12(b)(6) .......... 3

Plaintiffs Scott Pflaumer, Hans Cummings, and Mark Rosenthal ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in opposition to Defendant Ace Hardware Corporation's Motion to Dismiss (ECF No. 28).

## INTRODUCTION

This putative class action arises from Defendant Ace Hardware Corporation's unlawful invasions into its website users' privacy. Defendant operates a consumer-facing commercial website[1] (referred to herein as the "Website"), through which users can, *inter alia*, browse and/or purchase products. Like many websites, the Website uses third-party tracking technologies for targeted marketing and analytics, generating revenue from users' data. The Website purports to give users control over what data it collects and shares with, and/or sells to, third parties, but those mechanisms do not work as represented. The Website deploys third-party tracking technologies immediately upon a user's initial visit to the Website, before users receive any meaningful notice or opportunity to control the interception and/or dissemination of their personal data. Further, the Website continues its surreptitious tracking practices even after users affirmatively reject the sale and/or sharing of their personal data.

Based on the foregoing, Plaintiffs allege that Defendant violated the federal Wiretap Act, 18 U.S.C. § 2510, et seq.; California's Invasion of Privacy Act ("CIPA"), including Penal Code § 631 (illegal wiretapping) and § 638.51 (unlawful use of a pen register or trap and trace device); California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; the California Constitution at California Constitution, Article I, Section 1; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., and common law, including invasion of privacy, intrusion upon seclusion, fraud and deceit, and unjust enrichment. Defendant now moves to dismiss the Complaint; however, Defendant's Motion misreads both the Complaint and the relevant case law. The Motion asks the Court to hold that data is not "personal" unless a user types it into a form, that a company escapes the wiretapping statutes by outsourcing the interception, and that a consent banner that does not work is merely a "good faith mistake." None of those propositions survives contact with the pleaded facts or with the decisions of this District. Defendant's Motion disregards a substantial body of authority recognizing Article III standing

[1] https://www.acehardware.com/. *See* Compl. ¶ 2.

on materially similar allegations. As pled, Defendant's procurement and deployment of tracking software (used to intercept, disclose, and monetize Plaintiffs' personal data) violates the federal Wiretap Act and California privacy law. The Motion should be denied.

## FACTUAL BACKGROUND

Defendant operates the Website where consumers can, *inter alia*, browse and purchase hardware products, tools, home improvement supplies, and related merchandise; locate and interact with brick-and-mortar locations; engage with customer support services; and create and manage accounts. *See* Compl ¶¶ 2, 18 (ECF No. 1). Upon navigating to the Website, the Website displays a cookie banner ("Cookie Banner") informing users that they may control the sale and/or sharing of their personal data via the Website's cookie settings ("Cookie Settings"). *See* Compl ¶¶ 2, *Figure 1*, 3-6, 51, *Figure 7*. Both the Cookie Banner and the Cookie Settings represent that users can reject the Website's use of advertising, marketing, and analytics cookies (referred to herein as the "Tracking Tools") by consenting only to cookies that are essential to the Website's functionality. *See* Compl. ¶¶ 2-9, 38-50. Plaintiffs each accessed the Website, relied on the representations in the Cookie Banner and Cookie Settings, and used those mechanisms to reject the sale or sharing of their personal data. *See* Compl. ¶¶ 15-17. Plaintiff Pflaumer is a resident of California who accessed the Website in May of 2025 to shop for screwdrivers, and again in February of 2026. *See* Compl. ¶ 15. Plaintiff Cummings is a resident of Indiana who most recently accessed the Website in February of 2026. *See* Compl. ¶ 16. Plaintiff Cummings maintains an account with Defendant and has made several purchases via the Website. *Id.* Plaintiff Rosenthal is a resident of Colorado who maintains an account with Defendant. Plaintiff Rosenthal most recently accessed the Website in January of 2026 to shop for barbecue supplies. *See* Compl. ¶ 17.

In reality, the Website deploys the Tracking Tools the moment users, such as Plaintiffs, navigate to the Website, before any opportunity to offer consent. *See* Compl. ¶¶ 2-9, 51-58. Moreover, after users affirmatively reject the Website's use of Tracking Tools, the Website continues to utilize and deploy

Tracking Tools, transmitting users' Sensitive Information[2] to the advertising, social media, and analytics companies that designed and operate the Tracking Tools (the "Tracking Entities"[3]). *See* Compl. ¶¶ 7, 83-99. As alleged, the Cookie Banner and Cookie Settings operate to deceive users, depriving them of control over their Sensitive Information and diminishing its value, so that Defendant can monetize that information. *See* Compl. ¶¶ 3-9, 38-99.

## LEGAL STANDARD

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Examples of concrete but intangible harms include "reputational harms, ***disclosure of private information***, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (emphasis added). To defeat a motion under Fed. R. Civ P. 12(b)(6), "Plaintiffs must allege 'enough facts to state a claim to relief that is plausible on its face.' A claim is facially plausible when the pleaded facts allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, No. 25-cv-06213-EKL, 2026 U.S. Dist. LEXIS 130851, at *6 (N.D. Cal. June 11, 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] "Sensitive Information" refers to detailed interaction and behavioral data, including users' selections of links, buttons, forms, and other on-page elements, as well as information entered into search fields and may include webpages and products viewed or purchased; inferred interests, preferences, age, location, or other characteristics based on user behavior and content engagement; and personal, device, and technical identifiers such as device type, operating system, and browser type. The data also includes persistent identifiers that enable recognition of users across sessions and websites, users' email addresses, and approximate geolocation information derived from IP addresses or similar signals. Compl. ¶ 5.

[3] The Tracking Entities include, but are not limited to, Google, Bazaarvoice, Verint, Monetate, and Pingdom. Compl. ¶¶ 61-99.

544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted)).

## ISSUES TO BE DECIDED

- Have Plaintiffs alleged concrete injury sufficient to confer Article III Standing?
- Have Plaintiffs stated claims under the federal Wiretap Act, 18 U.S.C. § 2510, et seq., and for common law intrusion upon seclusion; fraud, deceit, and/or misrepresentation; and/or unjust enrichment?
- Has Plaintiff Pflaumer stated claims under Art. 1, § 1 of the California Constitution, CIPA at Cal. Penal Code § 631 and § 638.51, the CLRA, and/or the UCL?

## ARGUMENT

### I. Plaintiffs Have Suffered Concrete Injuries, Establishing Article III Standing

Defendant's Motion advances nine arguments, but they rest on a single premise: that because Plaintiffs did not type information into a form, nothing of theirs was taken. That premise is wrong as a matter of pleading, and as a matter of law, and once it falls, the balance of the Motion falls with it. Plaintiffs' allegations establish that, as a result of Defendant's conduct, they have suffered concrete injuries sufficient to confer Article III standing. The "right to privacy encompass[es] [an] individual's control of information concerning his or her person." *Patel v. Facebook*, 932 F.3d 1264, 1273 (9th Cir. 2019). The unauthorized tracking and disclosure of Plaintiffs' Sensitive Information, therefore, satisfies Article III's concreteness requirement. *See, e.g., Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907, at *5-6 (N.D. Cal. Jan. 6, 2026); *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 599 (9th Cir. 2020); *Patel*, 932 F.3d at 1272.

#### A. The Unauthorized Interception, Transmittal, and Use of Plaintiffs' Sensitive Information Is a Highly Offensive Intrusion

Courts in the Ninth Circuit continue to hold that a plaintiff establishes Article III standing where a defendant deprives them of control over their personal information via Tracking Tools without their consent. *See Davis*, 956 F.3d at 599; *Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *5-7; *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 866 (N.D. Cal. 2025); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025); *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782, at *10 (C.D. Cal. May 5, 2026);

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964, at *10 (N.D. Cal. Nov. 24, 2025); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1104 (S.D. Cal. 2025). Plaintiffs' allegations align with the above authorities. As in each of them, Plaintiffs allege that Defendant procured the Tracking Entities and their Tracking Tools to place tracking and identifying cookies on Plaintiffs' devices. *See* Compl. ¶¶ 2-10, 15-17, 38-99, 103-113. These Tracking Tools intercepted and shared Plaintiffs' Sensitive Information (defined in fn. 3, *supra*) with the Tracking Entities without Plaintiffs' consent. *Id.* Defendant and the Tracking Entities then used the insights derived from Plaintiffs' Sensitive Information for marketing and targeting advertising purposes, enhancing their bottom line. *Id.* Thus, Plaintiffs' allegations are sufficient to confer Article III standing.

Defendant argues that "Plaintiffs cannot plead a concrete injury because they fail to allege that they shared any personal information with Ace (or any other third party)." Def.'s Mem. at 5. However, Defendant's argument ignores the breadth of personal information included in Plaintiffs' Sensitive Information, which was intercepted via Plaintiffs' navigation to and use of the Website and subsequently shared/sold to the Tracking Entities without consent; and the pervasiveness of the alleged tracking, including tracking Plaintiffs across multiple websites and browsing sessions. Defendant next contends that Plaintiffs' Sensitive Information is not sufficiently personal to warrant protection. *Id.* at 5-6. Relying primarily on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), Defendant asserts that "a website capturing similar information as the one in this case did not result in the kind of highly offensive interferences or disclosures actionable at common law." Def.'s Mem. at 6 (citing *Popa*, 153 F.4th at 791). Defendant continues that "captur[ing] data about site visits . . . such as 'device' information, 'type of browser,' 'operating system,' 'mouse movement' and 'screen swipes,' 'text inputted by the user,' and 'how far down a webpage a user scrolls'" cannot give rise to a "cognizable injury." *Id.* at 7 (quoting *Popa*, 153 F.4th at 786). This Court should join the *Gilligan* and *Camplisson* courts in concluding that *Popa* "is off-point given the factual circumstances present in that case." *See D'Antonio v. CNN, Inc.*, No. 24 CV 3132 (VM), 2026 U.S. Dist. LEXIS 78088, at *12 n.2 (S.D.N.Y. Apr. 9, 2026). "In *Popa*, the court found that the alleged injury did not have a common-law analogue . . . but as the *Camplisson* court remarked, the facts in that case are 'distinguishable from the facts presented in this case, where the collection of Plaintiffs' information concerns their person, ***is much broader in scope***, and has been found

to be a privacy harm in a wide variety of cases.'" *Id.* (emphasis added) (quoting *Camplisson*, 809 F. Supp. 3d at 1106); *see also Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026) (allegations that the defendant collected "cookies, IP addresses, hashed email addresses, HTTP headers that specify information such as type of browser, device and operating system information, location information, and other unique identifiers" were sufficient to establish standing, as they constituted a "highly offensive intrusion of privacy that invades a reasonable internet user's expectation of privacy") (internal quotation marks and citation omitted); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 U.S. Dist. LEXIS 23256, at *2-3 (N.D. Cal. Jan. 29, 2026) (finding Article III standing where plaintiff alleged that defendant installed trackers onto browsers that sent identifying information, including the user's IP address and device metadata, to third parties); *Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d 1196, 1199-202 (C.D. Cal. 2026) (finding Article III standing where the plaintiff alleged that trackers engaged in "fingerprinting" and collected data about users' device and browser information, geographic information, and other personalized information); *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *6-7 (N.D. Cal. Jan. 27, 2026) (finding Article III standing and explaining that "misrepresenting how private information will be used" by telling users that their "individual information would not be shared because they could opt out of unnecessary cookies," but sharing it anyway is "similar in kind to a harm recognized as actionable at common law"). Here, as in *Gilligan*, *Shah*, *Krzyzek*, *Harris*, and *Hassid*, "[t]he scope of the alleged tracking…is materially more invasive than the limited tracking at issue in [*Popa*]." *Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *6; *Shah*, 2026 U.S. Dist. LEXIS 15193, at *6; *Hassid*, 816 F. Supp. 3d at 1199-202; *Harris*, 2026 U.S. Dist. LEXIS 23256, at *2-3.

Here, like *Gilligan*, "Plaintiffs allege that [Defendant] compiled detailed profiles by tracking their interactions across many websites, and that the tracking 'across the internet' remains ongoing." *Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *6; *see also Krzyzek*, 817 F. Supp. 3d at 863 (similar); *Harris*, 2026 U.S. Dist. LEXIS 23256, at *2-3 (similar). As in *Garcia*, the Complaint asserts that the Tracking Tools on Defendant's Website intercepted and transmitted Plaintiffs' Sensitive Information "without [their] consent and despite [their] choice to reject all cookies through a cookie consent banner," "such that Plaintiff[s] lacked any choice in whether third-party cookies were placed on her device such that her user

data would be transferred." *Garcia*, 2026 U.S. Dist. LEXIS 101782, at *9; *see also Shah*, 2026 U.S. Dist. LEXIS 15193, at *5-8 (similar). Thus, *Popa* does not support Defendant's position, and the remaining cases cited are similarly distinguishable.

Defendant's remaining authorities do not fill the gap, because each turned on a pleading failure that is absent here. In every one of them, the plaintiff declined to say what was taken; here, the Complaint says precisely what was taken, from whom, and to whom it went. In *Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2394-AJB-BJW, 2026 U.S. Dist. LEXIS 36704 (S.D. Cal. Feb. 23, 2026), the sensitive user information at issue was limited to "Plaintiff's search queries . . . page navigation history, and metadata associated with his site visit, including his [IP] address and device identifiers." *Id.* at 3. *Maghoney* did not involve allegations as to interception/transmittal of persistent identifiers that enable recognition of users across sessions and websites and/or fraudulent misrepresentations related to the unauthorized sale/sharing of user data. *Maghoney* is therefore distinguishable. This case aligns instead with *Shah*, *Garcia*, *Harris*, *Gilligan*, and *Krzyzek*.

In *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 U.S. Dist. LEXIS 216362 (S.D. Cal. Nov. 3, 2025), the plaintiff, *a website tester*, "ma[de] no effort to establish a close relationship between her purported injury and a traditional harm." *Id.* at 7. "Instead of pointing to any specific tort," "that has traditionally been actionable," "[plaintiff] broadly contend[ed] that any invasion of a statutorily recognized privacy interest is sufficient to constitute an Article III injury." *Id.* The *Rodriguez* court accordingly found the plaintiff's allegations to be deficient in light of *TransUnion*. *Id.* Further, the plaintiff's allegations rested entirely upon interception and disclosure of "[her] IP address ***and the other data linked to her IP address***." *Rodriguez*, 2025 U.S. Dist. LEXIS 216362, at *9 (emphasis in original). Plaintiffs' Sensitive Information, by contrast, extends far beyond an IP address. And *Rodriguez* did not involve allegations related to the subject website's misrepresentations about the functionality of consent mechanisms and/or the sale/sharing of user data. Plaintiffs do not rest on a bare statutory violation. They allege a concrete harm — the interception, transmittal, and sale of their Sensitive Information, procured by misrepresentation — that bears a close relationship to harms long recognized at common law, including intrusion upon seclusion. *See*, *e.g.*, *Krzyzek*, 817 F. Supp. 3d at 864; *Gabrielli*, 815 F. Supp. 3d 852 at 867-68; *Garcia*, 2026 U.S. Dist. LEXIS 101782, at *18-22; *Gilligan*, 2026 U.S. Dist. LEXIS 1907,

at *4-7; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *9. Thus, both the underlying facts and resulting allegations render *Rodriguez* distinguishable from this case. *See*, *e.g.*, *Krzyzek*, 817 F. Supp. 3d at 864; *Gabrielli*, 815 F. Supp. 3d 852 at 867-68; *Garcia*, 2026 U.S. Dist. LEXIS 101782, at *18-22; *Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *4-7; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *9. Thus, both the underlying facts and resulting allegations render *Rodriguez* distinguishable from this case.

In *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025), the plaintiff only "made four general allegations about how Defendant caused Plaintiff's alleged injury." *Id.* at *6; *see also Mitchener v. Curiositystream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025) (same). The *Kishnani* and *Mitchener* courts reasoned that because the plaintiff only generally alleged that "Defendant invaded his privacy by impermissibly collecting Plaintiff's 'data' and 'information,'" the plaintiff failed to allege facts from which the court could infer a concrete injury. *Id.* at *7; *see also Mitchener*, 815 F. Supp. 3d at 850 (same). The reasoning in *Kishnani* and *Mitchener* was premised on pleading deficiencies that, as explained above, are not present here. Because the Complaint does not suffer from the factual and/or pleading deficiencies identified in *Maghoney*, *Rodriguez*, *Kishnani*, and *Mitchener*, Defendant's standing challenge fails.

### B. Plaintiffs Have Adequately Alleged Deprivation of Control and Diminishment of the Value of Their Sensitive Information

Unable to show that Plaintiffs lost nothing, Defendant next argues that what they lost was worthless. Defendant asserts that Plaintiffs fail to adequately plead their Sensitive Information diminished in value and that the Complaint does not allege that Plaintiffs' data has value or that it was diminished. *See* Def.'s Mem. at 9 (*quoting In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 931-32 (N.D. Cal. 2015)). But Defendant relies on the district court's 2015 decision while ignoring what the Ninth Circuit held on review of that very case. Reversing the dismissal of the Wiretap and CIPA claims, the court reasoned (in review of the same case cited by Defendant) that similar tracking practices to those at issue here "cause harm or a material risk of harm to [users'] interest in controlling their personal information" and held (when reversing the district court's dismissal of the Wiretap and CIPA claims) that similar allegations that the defendants profited from unauthorized use of the plaintiffs' personal information sufficed as an injury. *See Davis*, 956 F.3d at 599-601; *see also Pemberton*, 2025

U.S. Dist. LEXIS 230964, at *22. Here, the Complaint alleges that Defendant's fraudulent conduct resulted in Plaintiffs' loss of control of their personal information and diminution in the value of their personal data. *See* Compl. ¶¶ 1-2, 8, 11, 160, 172, 174, 230, 243-44, 248.

Plaintiffs further allege that Defendant's conduct "enable[ed] Defendant and Tracking Entities to earn more money and enhance marketing effectiveness through the collection, analysis, and dissemination of users' Sensitive Information, especially as that Sensitive Information is used to build detailed marketing profiles of users to enhance the effectiveness and efficiency of Tracking Entities' and Defendant's marketing efforts." Compl. ¶ 43; *see also* Compl. ¶ 71 (Google provides analysis that helps Defendant monetize Plaintiffs' Sensitive Information). Thus, a review of the Complaint refutes Defendant's argument that "the Complaint does not contain a single allegation that Plaintiffs' data carries any value" and/or that "Plaintiffs do not plausibly allege that their own information has value." *See* Def.'s Mem. at 9. Under *Davis* and *Pemberton*, Plaintiffs have adequately alleged that Defendant deprived them of control over their data, that Defendant profited over that deprivation of control, and that the value of Plaintiffs' data was resultingly diminished.

## II. Plaintiffs Have Stated Claim Under the Federal Wiretap Act and CIPA

CIPA, Cal. Penal Code § 631, imposes liability on any person who, "by means of any machine, instrument, contrivance, or in any other manner," (1) intentionally taps a wire, line, cable, or instrument; (2) willfully attempts to read or learn the contents or meaning of any communication while in transit; (3) uses or attempts to use any information so obtained; or (4) aids, agrees with, employs, or conspires with any person to unlawfully do, or cause to be done, any of the acts mentioned in the section. *See* Cal. Penal Code § 631(a); *Gianne v. Accor Mgmt. US Inc.*, No. CV 25-2425-DMG (Ex), 2026 U.S. Dist. LEXIS 75987, at *16-17 (C.D. Cal. Mar. 31, 2026)*; see also Heerde v. Learfield Commc'ns, LLC,* 741 F. Supp. 3d 849, 861 (C.D. Cal. 2024). Similarly, the federal Wiretap Act requires a showing that Defendant (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. *See* 18 U.S.C. § 2511(1).

Defendant does not dispute that the Tracking Tools are "devices," that it purposefully installed them on the Website, and/or that they transmitted data to third parties. Defendant disputes only three

elements ("contents," "in transit," and intent) and, as to the federal claim, asserts a consent defense. Each is addressed in turn. Here, Plaintiffs allege that the Tracking Tools captured their Sensitive Information without consent and transmitted it to the Tracking Entities in real time. *See* Compl. ¶¶ 2-11, 15-17, 38-50, 58-99, 103-08, 160, 194. Plaintiffs further allege that Defendant procured the Tracking Entities to read the contents of those communications in transit, without consent, and that Defendant and the Tracking Entities then used what they intercepted to build marketing profiles of the Website's users. *See* Compl. ¶¶ 10, 43-45, 71-75, 132-35. Plaintiffs' allegations satisfy the elements of both claims.

### A. Plaintiffs Adequately Plead Interception of Contents of Communications in Transit

Defendant argues that Plaintiffs fail to allege interception of contents of communications in transit. *See* Def.'s Mem. at 10. Defendant asserts that Plaintiffs have failed to allege that the substance and meaning of their communications with the Website were intercepted and that "'[l]isting general categories of information that [p]laintiffs allege [] cookies are capable of collecting (without alleging such information was actually collected) does not suffice.'" *Id.* (quoting *Ortiz v. Foris Dax, Inc.*, No. 25-cv-08950, 2026 U.S. Dist. LEXIS 113330, at *16-17 (N.D. Cal. May 21, 2026)). Defendant further argues that "Plaintiffs do not allege the 'contents' of their communications were intercepted because they do not allege they ever inputted data on the Website." *Id.* The Complaint's allegations refute both arguments. See Compl. ¶¶ 11, 15-17, 103-06. Further, "***[i]nformation about webpages viewed and search terms conducted are examples of contents***, not record, communications." *Ortiz*, 2026 U.S. Dist. LEXIS 113330, at *15 (emphasis added). In the context of CIPA, "there is no requirement that a plaintiff 'specifically allege the exact contents of [their] communications.'" *Id.* (quoting *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023)). The allegations in the Complaint must only "be sufficient for the court to determine that more than record information was implicated." *Id.*

Here, the Complaint alleges that Tracking Tools' interceptions of Plaintiffs' communications and browsing activity "include[ed] the pages and product information…review[ed], together with identifiers and related metadata." *See* Compl. ¶¶ 15-17. The Complaint further alleges that "Plaintiffs visited the Website and communicated information to Defendant through their browsers, including browsing activity, product views, and interaction data." *Id.* at ¶ 11. The Complaint also explains in detail that "[t]ransmitted URLs that include both the path and query string reflect the substance of a user's

communication and therefore constitute content" and that "the network requests intercepted by the Tracking Entities included detailed Request URLs containing the names and file locations of webpages, the products users browsed on the Website, identifying information in the form of cookies, and user activity information indicating users' commercial activity and purchases." Compl. ¶¶ 103-04. In sum, Plaintiffs' allegations establish that the contents of their communications (including the webpages and product information viewed, URLs that include both the path and query string, and request URLs containing the names and file locations of webpages and the products users browsed) were intercepted contemporaneously with Plaintiffs' communications with the Website. Thus, under *Ortiz*, Plaintiffs have sufficiently alleged that the content of their communications was intercepted. *See Ortiz*, 2026 U.S. Dist. LEXIS 113330, at *15; *see also Davis*, 956 F.3d at 596 (finding that alleged interception of URLs, which "provide[] significant information regarding the user's browsing history, including the identity of the individual internet user and the web server, as well as the name of the web page and the search terms that the user used to find it," and use of cookies, which "capture, collect, and compile the referer headers from the web pages visited" across websites, are sufficient to support 'contents' allegations of Wiretap and CIPA claims at the pleading stage); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837-38 (E.D. Cal. 2025) (similar).

With respect to the 'in transit' argument, the Complaint explains that "[t]he Tracking Tools intercepted the contents of Plaintiffs' communications contemporaneously with Plaintiffs' interactions with the Website" as "[t]he Tracking Tools began transmitting data to the Tracking Entities as soon as the Tools loaded onto Plaintiffs' browsers, and additionally transmit data at the moment Plaintiffs submitted information through the Website." Compl. ¶ 105. The Complaint further explains that the "interception, duplication, and transmission occurred inside Plaintiffs' browsers, before the communications fully reached users' devices, or otherwise before the communications were transmitted from users' devices, and therefore occurred while the communications were in transit." Compl. ¶ 106. Further, the allegations in the Complaint detail how the Tracking Tools intercept user data in real time and how that information is subsequently utilized. *See* Compl. ¶¶ 58-99. Thus, Plaintiffs' allegations also satisfy the 'in-transit' requirement. *See Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 928 (C.D. Cal. 2025); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1227-28 (C.D. Cal. 2024);

*Goldstein v. Rumble Inc.*, No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489, at *13-15 (C.D. Cal. Apr. 24, 2026). Thus, Plaintiffs' allegations satisfy both the 'contents' and 'in transit' requirements of their claims under both CIPA and the Wiretap Act.

**B. Plaintiff Pflaumer Has Adequately Pled Aiding and Abetting Under CIPA § 631(a)**

Defendant next argues that Plaintiff Pflaumer fails to allege aiding and abetting under the fourth clause of Cal. Penal Code § 631(a) because "aiding and abetting liability[] require[s] a website operator to have 'both knowledge of the conduct that will violate the statute ***and a purpose of aiding, agreeing with, or employing the third party to commit those acts***.'" Def.'s Mem. at 11-12 (quoting *Smith v. YETI Coolers*, LLC, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis in original).

Plaintiffs contest the premise of Defendant's argument; specifically, whether the fourth clause carries a common-law scienter requirement. Plaintiffs acknowledge that certain district courts within the Ninth Circuit have reasoned that, because Cal. Penal Code § 631(a) does not define "aids, agrees with, employs, or conspires with," courts should fill that gap with the common law definition of aiding and abetting and read a scienter requirement into the statute. However, there exists a competing line of cases that rejects importation of common law aiding and abetting requirements into § 631(a)'s fourth prong, relying instead on the statute's plain text. *See*, *e.g.*, *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894, 896 (S.D. Cal. 2025) (holding that the statute only requires a purposeful act, rather than intent to violate the law, and there is no basis to read the common law standard of aiding and abetting into the statute when the statutory language is clear and unambiguous); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) (same); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 958–59 (E.D. Cal. 2025) (same); *Gabrielli*, 815 F. Supp. 3d at 870 (same).

Here, Plaintiffs allege that "Defendant knowingly procured the Tracking Entities to embed and configure the Tracking Tools in its Website, in a manner that enabled the Tracking Entities to intercept the contents of Plaintiffs' communications with the Website." Compl. ¶ 110. The Complaint further explains that "Defendant voluntarily integrated Tracking Tools from various Tracking Entities into its Website's programming. Defendant's use of such tools on its Website is performed pursuant to commercial agreements between Defendant and third parties, including Tracking Entities." Compl. ¶ 38. The Complaint goes on to explain in detail the process by which the Tracking Tools were integrated into

the Website, the conscious and knowing steps undertaken by Defendant, what policies and guidelines Defendant was required to follow when implementing the Tracking Tools, what information was necessarily communicated to Defendant by the Tracking Entities (as to the functionality of the Tracking Tools), and what analytical information was provided to Defendant by the Tracking Entities. *See* Compl. ¶¶ 61-99. Thus, applying the above principles to the case at bar, Plaintiffs have sufficiently alleged that Defendant acted intentionally to facilitate the Tracking Entities' conduct.

Even if the Court were to apply the common law definition of aiding and abetting, and require scienter (which it should not), Plaintiffs' allegations are still sufficient at this stage to establish a claim under the fourth prong of § 631(a). *See Gianne*, 2026 U.S. Dist. LEXIS 75987, at *16-17; *Walsh*, 2025 U.S. Dist. LEXIS 204652, at *45-47. Regardless of approach in analyzing the requirement *vel non* of scienter, courts agree that a factual dispute as to whether a defendant possessed the requisite intent under CIPA is generally a question that cannot be resolved at the pleading stage if the complaint contains sufficient factual allegations. *See Gladstone v. Amazon Web Servs.*, 739 F. Supp. 3d 846, 860 (W.D. Wash. 2024) ("Whether Defendant truly possessed the requisite intent will be tested on an evidentiary record.") (internal quotation marks omitted); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) (same).

Defendant next argues that because Plaintiffs "allege that Ace used the Cookie Banner to disclose cookies and provide options to customize the Website experience," "Plaintiffs' allegations confirm Ace did not intend to aid the surreptitious collection of communications." Def.'s Mem. at 12. But Plaintiffs allege that the Cookie Banner and Cookie Settings contained intentional misrepresentations that deceived users into believing their Sensitive Information would not be shared without their consent. *See*, *e.g.*, Compl. ¶¶ 3-9, 51-57. In other words, the Cookie Banner and Cookie Settings did not accurately disclose Defendant's unlawful tracking practices. And Defendant cannot rely on its own alleged misrepresentations to disclaim knowledge, especially in the face of Plaintiffs' detailed allegations as to how the Tracking Tools were integrated on the Website, what affirmative steps were undertaken by Defendant, and the knowledge that came with each step of implementation (explained in detail above), all of which establish an intentional act. *See Zarif*, 789 F. Supp. 3d at 894 (finding that a plaintiff's allegation that the defendant "acted deliberately when it deployed tracking software that intercepted her

communications" was sufficient to allege the requisite intent, and that the defendant's argument that it did not know its conduct was unlawful was unavailing). But even if Defendant could argue ignorance, that is a factual dispute that cannot be resolved at the pleading stage.

Finally, Defendant argues that "Plaintiffs failed to plead that the 'Tracking Entities' have the predicate liability necessary for [Defendant's] aiding and abetting," because "the first clause of section 631(a) fails when applied to internet communications" and "[t]here is no underlying violation of the second clause because the 'Third Parties' lack the requisite intent." Def.'s Mem. at 12-13. However, Plaintiff Pflaumer's allegations under the second clause of CIPA 631(a), as opposed to the first clause (*see*, *e.g.*, Compl. ¶ 194), unquestionably apply to the internet communications at issue here. *See Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198 (S.D. Cal. 2024); *Heerde*, 741 F. Supp. 3d at 858 n.3; *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *Zarif*, 789 F. Supp. 3d at 897; *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023). Further, notwithstanding that intent under the second clause would be attributable to Defendant rather than the Tracking Entities, claims under the second clause of CIPA 631(a), like claims under the fourth clause, do not require a showing of scienter, *but rather a showing of a purposeful act*, which was pled here. *See Zarif*, 789 F. Supp. 3d at 894; *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 976–77 (C.D. Cal. 2023); *see also United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015) (applying the same analysis to the Wiretap Act and holding that the statute require an intentional act," and does not require that the purposeful act be "committed for a particular evil purpose"); *Krzyzek*, 817 F. Supp. at 866 n.8 (reasoning that courts analyze violations of 18 U.S.C. § 2511(1) and CIPA § 631(a) under the same standards). Thus, Plaintiffs' factual allegations establish a predicate offense under the second clause of CIPA 631(a) sufficient to support a claim under the fourth clause of CIPA 631(a). And, as explained in detail above, even if there were a scienter element to the second clause of CIPA 631(a) (which there is not), Plaintiffs' allegations adequately plead Defendant's intent, presenting a factual dispute that cannot be resolved at the pleading stage. Therefore, Defendant's Motion must be denied.

### C. The Wiretap Act's Crime-Tort Exception Applies and Defeats the One-Party Consent Safe Harbor

Defendant's consent defense fails, because (i) the party exception does not shield a defendant who procures another's interception, and even if it did, (ii) the crime-tort exception would defeat it. Defendant next argues that the "Tracking Entities consent defeats Plaintiffs' ECPA claim." *See* Def.'s Mem. at 13. However, the Tracking Entities were not parties to Plaintiffs' conversations with the Website; rather, they were unannounced second auditors who intercepted the contents of Plaintiffs' communications. Thus, whether the Tracking Entities consented to their own interceptions is irrelevant to party consent. Defendant then pivots to argue that "a website operator's use of technologies like those alleged in the Complaint constitutes…consent from that operator to the data collection at issue." Def.'s Mem. at 13. In other words, Defendant claims it consented to its own vendors' interception of its users' communications, and that its consent is enough. Notably, Defendant does not challenge whether Plaintiffs have satisfied the elements of their Wiretap claim. And, perhaps more importantly, the "party defense" does not shield Defendant from liability here. The "party defense" shields only direct interceptors, not procurers. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 925-26 (D. Minn. 2024) (citing *Reynolds v. Spears*, 93 F.3d 428, 432 (8th Cir. 1996)); *see also Davis*, 956 F.3d at 608. Here, Plaintiffs allege Defendant is a procurer rather than a direct interceptor. *See*, *e.g.*, Compl. ¶¶ 8, 12, 80, 109-13.

Even if the Court were to find the "party defense" applicable, the statute's crime-tort exception still renders Defendant liable. Defendant procured and installed the Tracking Tools for the purpose of facilitating interception of users' data by the Tracking Entities, utilizing the unlawfully obtained data, invading Plaintiffs' privacy, and violating multiple statutes. Defendant argues that Plaintiffs fail to allege a criminal purpose and that "the crime-tort exception is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." Def.'s Mem. at 14 (quoting *J.S. v. Spring Fertility Holdings, LLC*, No. 5:24-cv-07374-EJD, 2026 U.S. Dist. LEXIS 117312, at *9 (N.D. Cal. May 27, 2026)). However, Plaintiffs' claims for intrusion upon seclusion and fraud provide a basis for the crime-tort exception. *See Allison v. PHH Mortg.*, No. 25-cv-05323-RFL, 2026 U.S. Dist. LEXIS 107416, at *32 (N.D. Cal. May 14, 2026); *see also Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 U.S. Dist. LEXIS 94801, at *8-13 (N.D. Cal. Apr. 29, 2026). And a tortfeasor being motivated by profit does not dispose of the crime-tort exception. *See Riganian v. LiveRamp Holdings, Inc.,* 791 F.

Supp. 3d 1075, 1091 (N.D. Cal. 2025); *see also Krzyzek.*, 817 F. Supp. 3d at 869. Indeed, "[t]he existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money." *Id.* (quoting *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *6 (N.D. Ill. Feb. 21, 2025)).

Here, Plaintiffs allege that Defendant facilitated the Tracking Entities' unlawful interception of Plaintiff's Sensitive Information for the unlawful purpose of *using* that fraudulently obtained data, *in violation of CIPA and common law* (intrusion and fraud), to monetize it. *See, e.g.,* Compl. ¶¶ 160, 165. Further, Defendant's ***subsequent use*** of that intercepted information for marketing and analytics purposes constituted a ***separate and independent*** violation of the third clause of CIPA § 631(a), which prohibits any person who "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." For purposes of the crime-tort exception, this subsequent use constitutes a distinct criminal and tortious act from the initial interception. *See Smart v. Main Line Health*, No. 22-5239, 2026 U.S. Dist. LEXIS 81515, at *8-9 (E.D. Pa. Apr. 14, 2026). The fact that Defendant benefited financially from its unlawful conduct does not cure the conduct's underlying purpose. *Spring Fertility Holdings* is thus distinguishable from the case at bar; there, the only allegations related to the defendant's criminal/tortious purpose were "for advertising" and/or "targeted advertising purposes." *See Spring Fertility Holdings*, 2026 U.S. Dist. LEXIS 117312, at *9. The pleading deficiency in *Spring Fertility Holdings* is not present here. Accordingly, Plaintiffs have stated a claim under the federal Wiretap Act, and Defendant's Motion must be denied.

### D. Plaintiff Pflaumer Has Adequately Pled a Claim Under Cal. Penal Code § 638.51

Defendant next argues that "[n]umerous California courts have held that the online tracking technology alleged here does not fall within Section 638.51." Def.'s Mem. at 15 (citing *Schallert v. Palo Alto Networks*, 2026 Cal. Super. LEXIS 24039, at *2-4 (Cal. Super. Ct. Mar. 6, 2026)). Defendant claims that "numerous" courts support it. It cites a single state trial court ruling — one that rejected a substantial body of federal authority without analysis, while acknowledging that trial court rulings "do not have any binding or precedential value." *Schallert*, 2026 Cal. Super. LEXIS 24039, at *2 (citing *Sargent Fletcher,*

*Inc. v. Able Corp.*, 3 Cal. Rptr. 3d 279, 286 (Ct. App. 2003) ("a written trial court ruling has no precedential value")).

Defendant next argues that the "statute's plain language excludes website tracking technology." Def.'s Mem. at 15. But Defendant's following argument — that "the statute's legislative history excludes website tracking technology" — concedes that the text is not as plain as Defendant claims. *See Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) ("If the words of a statute are unambiguous, this first step of the interpretive inquiry is our last."). In any event, the assembly bills Defendant relies on are not precedential authority; legislative history cannot override statutory text. Courts in the Ninth Circuit have routinely rejected Defendant's argument and sustained CIPA § 638.51 claims on materially similar allegations and tracking technology. *See In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 896-97 (N.D. Cal. 2026) (Davila, Edward J.) ("[T]hird-party trackers that were embedded in websites and intercepted communications between the user and the website" constitute pen registers and/or trap and trace devices.) ("[T]he Court is at this time inclined to follow what is currently the majority rule in federal district courts. Accordingly, the pen register statute applies to internet communications and does not bar Plaintiffs' claim here."); *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1211-12 (C.D. Cal. 2026) (Meta Pixel is a pen register/trap and trace device); *Garcia*, 2026 U.S. Dist. LEXIS 101782, at *16-18; *Casillas v. Six Flags Ent. Corp.,* 812 F. Supp. 3d 1016 (C.D. Cal. 2025) (similar); *Gabrielli*, 815 F. Supp. 3d at 871-72 (similar); *Krzyzek*, 817 F. Supp. 3d at 870 (similar); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023) (similar); *Vishal Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-33 (N.D. Cal. 2024) (similar). Indeed, in assessing what constitutes a "pen register," courts "should focus less on the form of the data collector and more on the result." *Greenley*, 684 F. Supp. 3d at 1050; *see also Casillas*, 812 F. Supp. 3d at 1033; *Vishal Shah*, 754 F. Supp. 3d at 932. The result here is that the Website's Tracking Tools intercepted and recorded "routing, addressing, or signaling information," including metadata, from Plaintiffs' electronic communications with the Website. *See* Cal. Penal Code § 638.50(b). Thus, the Tracking Tools are pen registers and/or trap and trace devices.

Finally, Defendant argues that "[e]ven if the pen register statute applies to website tracking technology, Pflaumer fails to allege that the statute applies here." Def.'s Mem. at 16. Defendant argues that the Tracking Tools are not pen registers or trap and trace devices because they collect the contents

of communications. *Id.* Again, courts have routinely rejected that argument and sustained CIPA § 638.51 claims on materially similar allegations and tracking technology. *See In re Apple Data Priv. Litig.*, 824 F. Supp. 3d at 896 (citing *Greenley*, 684 F. Supp. 3d at 1032; *Vishal Shah*, 754 F. Supp. 3d at 928); *Talkiatry Mgmt. Servs.*, 816 F. Supp. 3d at, 1211-12 (C.D. Cal. 2026); *Garcia*, 2026 U.S. Dist. LEXIS 101782, at *16-18; *Casillas v. Six Flags Ent. Corp.,* 812 F. Supp. 3d 1016 (C.D. Cal. 2025); *Gabrielli*, 815 F. Supp. 3d at 871-72; *Krzyzek*, 817 F. Supp. 3d at 870.

Neither of the two cases Defendant offers in response bears the weight placed on it. Defendant's reliance on *Mitchener*, *supra*, and *Tsering v. Meta Platforms, Inc.*, U.S. Dist. LEXIS 5762, *20 (N.D. Cal. Jan. 12, 2026), is unavailing. Both *Mitchener* and *Tsering* failed for pleading deficiencies that, as explained above, are not present here. *See Tsering*, U.S. Dist. LEXIS 5762, at *20 ("The…Complaint does not adequately allege that the information collected was 'dialing, routing, addressing, or signaling' information. To be sure, [software development kits] . . . can constitute pen registers in some circumstances. However, [plaintiffs] allege only that Meta's [software development kits] collected users' geolocation data, unique device identifiers, device fingerprint data, and personal information. There is no allegation that this information is used for dialing, routing, addressing, or signaling.") (internal quotation marks and citations omitted); *Mitchener*, 815 F. Supp. 3d at 852 (no allegations that information was collected about the plaintiff and no allegations as to routing, addressing, or signaling information). Here, the Complaint alleges that the "Tracking Tools are processes to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Tracking Entities to obtain their phone number and other identifying information." Compl. ¶ 116. The Complaint further explains that the "Tracking Tools are 'reasonably likely' to identify the source of incoming electronic impulses. In fact, they are designed specifically for that purpose. The IP addresses, detailed URLs, cookies, and Pixel IDs disclosed through the use of the Tracking Tools identify: (i) the source and destination of incoming signals to Plaintiffs' devices to the Tracking Entities; and (ii) the source and destination of outgoing signals from Plaintiffs' devices." Compl. ¶ 117. Thus, Plaintiff Pflaumer has stated a claim under CIPA ¶ 638.51 and, as a result, Defendant's Motion must be denied.

## III. Plaintiffs Have Stated Claims for Intrusion Upon Seclusion and Plaintiff Pflaumer Has Stated a Claim Under Article 1, Section 1 of the California

Invasion of privacy under the California Constitution and common law intrusion upon seclusion "involve similar elements," and because of the similarity of the claims, "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Davis*, 956 F.3d at 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 97 Cal. Rptr. 3d 274, 286, 211 P.3d 1063, 1073 (2009)). Plaintiffs satisfy both elements, and Defendant's contrary arguments — that Plaintiffs had no expectation of privacy, that any intrusion was not highly offensive, and that any intrusion was unintentional — each fail.

### A. Plaintiffs' Allegations Establish a Reasonable Expectation of Privacy

Plaintiffs had a reasonable expectation of privacy in their Sensitive Information, including information entered into search fields, page views, and links clicked. *See Heerde*, 741 F. Supp. 3d at 859; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023). Defendant relies on its Article III standing argument and asserts that "Plaintiffs do not allege they provided any of their information (including personal information) on the Website or that Ace collected any private information about them." Def.'s Mem. at 17. For the reasons explained in Section I(A), *supra*, Defendant's argument fails because it ignores the types and breadth of information included in Plaintiffs' Sensitive Information and the allegations that explain the process by which Plaintiffs' Sensitive Information was intercepted, collected, and subsequently used. Moreover, Defendant independently created an additional basis for Plaintiffs' reasonable expectation of privacy by falsely representing to Plaintiffs that they could control what information was shared with third-party Tracking Entities. *See Shah*, 2026 U.S. Dist. LEXIS 15193, at *12-14; *see also Brown*, 525 F. Supp. 3d at 1066. Thus, Plaintiffs' allegations adequately establish their reasonable expectation of privacy.

### B. Plaintiffs Adequately Plead a Highly Offensive Intrusion

Plaintiffs adequately allege a highly offensive intrusion. Courts have repeatedly held that the interception and disclosure of information of the type and breadth alleged here support that element. *See*, *e.g.*, *Heerde*, 741 F. Supp. 3d at 865; *Greenley*, 684 F. Supp. 3d at 1047; *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 149750, at *13 (N.D. Cal. Aug. 4, 2025); *In re Vizio*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017); *Price v. Carnival Corp.*, 712 F.Supp.3d 1347, 1363 (S.D. Cal.

2024). Nonetheless, whether Defendant's tracking and disclosure practices would highly offend a reasonable person cannot be resolved at the pleading stage. *See Davis*, 956 F.3d at 606; *Greenley*, 684 F. Supp. 3d at 1046; *Heerde*, 741 F. Supp. 3d at 865.

The cases relied on by Defendant to argue no highly offensive intrusion, all but one from 2014 or earlier,[4] "[a]ll involved browsing history or similar information,"[5] rather than unique identifiers that allowed tracking across multiple websites/browsing sessions. Further, both the Ninth Circuit Court of Appeals and courts within this District have criticized applying the reasoning in *Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260 (Ct. App. 2011), a case involving promotional mailers and disclosure of mailing addresses, to digital tracking technologies like the Tracking Tools. *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) ("The offensiveness inquiry is fact-specific . . . the data at issue here is more private than a person's mailing address and this kind of intrusion is not routine commercial behavior . . . the Court is not persuaded by cases that have mechanically applied *Folgelstrom* to invasion of privacy claims.") (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063; *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d at 988); *Davis*, 956 F.3d at 606 n.8 ("The non-precedential cases cited by [Defendant] do not compel the opposite conclusion . . . . In [*In re Google, Inc. Privacy Pol'y Litig.*, *Low*, and *In re iPhone Application Litig.*], there were . . . no allegations that the defendants tracked the plaintiffs after the plaintiffs stopped using the defendant's services."). Here, Plaintiffs' Sensitive Information was not publicly available, went far beyond a mailing address; it tracked Plaintiffs across multiple sites and sessions, and was subsequently transmitted and used by Defendant and the Tracking Entities. Thus, Plaintiffs have stated claims for common law intrusion upon seclusion,

---

[4] *See* Def.'s Mem. at 17-18 (citing *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014)).

[5] *Rusow v. SkinSpirit Essential LLC*, No. 24-cv-09317-CRB, 2025 U.S. Dist. LEXIS 276390, at *37 (N.D. Cal. Oct. 15, 2025).

and Plaintiff Pflaumer has stated a claim under Art. I, § 1, of the California Constitution.

## IV. Plaintiffs' Claims for Equitable Relief Sufficiently Allege Inadequacy of Available Remedy at Law

Plaintiffs seek relief that no damages award can supply: an order stopping the interception and compelling deletion of the data Defendant continues to hold. Defendant argues that "Plaintiffs' requests for equitable relief all fail because Plaintiffs fail to allege they lack an adequate remedy at law." Def.'s Mem. at 19 (citing *Escobar v. Hershey Co.*, No. 24-cv-06844-EJD, 2026 U.S. Dist. LEXIS 105150, at *22 (N.D. Cal. May 12, 2026); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). However, the adequacy of other available and sought-after relief turns on whether monetary "damages are insufficient to make [Plaintiffs] whole." *Escobar*, 2026 U.S. Dist. LEXIS 105150, at *22 (quoting *Gibson v. Jaguar Land Rover N. Am.*, No. CV 20-00769-CJC(GJSx), 2020 U.S. Dist. LEXIS 168724, at *8 (C.D. Cal. Sep. 9, 2020)). Indeed, *Sonner* explains that equitable relief is appropriate where "the same amount of money for the exact same harm is inadequate or incomplete." *Sonner*, 971 F.3d at 844. Though Defendant relies on *Sonner*, "the plaintiff in *Sonner* did not even allege that she lacked an adequate remedy at law . . . and . . . 'because *Sonner* was decided at a later posture . . . if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case.'" *Pereda v. GM LLC*, No. 21-cv-06338-JST, 2022 U.S. Dist. LEXIS 242771, at *36-37 (N.D. Cal. Dec. 9, 2022) (quoting *Johnson v. Trumpet Behavioral Health, LLC*, No. 3:21-cv-03221-WHO, 2022 U.S. Dist. LEXIS 3706, at *9 (N.D. Cal. Jan. 7, 2022)).

Here, unlike *Sonner* and *Escobar*, there is no monetary relief that can make Plaintiffs whole by mandating that Defendant change its business practices and discontinue use of Plaintiffs' Sensitive Information. Indeed, the "court should determine the adequacy of a remedy in law" based on Plaintiffs' factual allegations. *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992). The Complaint alleges and explains that Defendant facilitated the Tracking Entities' interception, transmittal, and use of Plaintiffs' Sensitive Information, and that Defendant benefits from *the continued use* of Plaintiffs' Sensitive Information. *See*, *e.g.*, Compl. ¶¶ 2-12, 15-17, 38-56, 127-35, 160, 215, 226-27, 248. Monetary damages are thus insufficient to make Plaintiffs whole because they do not preclude continued use/sale/sharing of Plaintiffs' data or facilitate the deletion of Plaintiffs' ill-gotten Sensitive Information.

Therefore, Plaintiffs have adequately stated claims for equitable relief.

## V. Plaintiff Pflaumer Has Stated Claims Under the UCL and CLRA

Defendant's challenges to Plaintiff Pflaumer's statutory claims fare no better. The UCL provides a cause of action for unlawful, unfair, or fraudulent business practices. *See* Cal. Bus. & Prof. Code § 17200. "Unlawful acts are anything that can properly be called a business practice and that at the same time is forbidden by law." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022). Similarly, the CLRA "broadly prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Thornton v. Micro-Star Int'l Co.*, No. 2:17-cv-03231-CAS-AFMx, 2018 U.S. Dist. LEXIS 181912, at *15 (C.D. Cal. Oct. 23, 2018) (quoting Cal. Civ. Code § 1770).

### A. Plaintiff Pflaumer Has Alleged Cognizable Harm Sufficient to Confer Standing Under the UCL and CLRA

Courts have held that privacy harms involving personal data of the type alleged confer standing under the UCL. *See In re TikTok, Inc.*, No. MDL 3144-GW-RAOx, 2025 U.S. Dist. LEXIS 218421, at *39-41 (C.D. Cal. Nov. 5, 2025), *adopted sub nom., In re TikTok, Inc.*, No. MDL 3144-GW-RAOx, 2025 U.S. Dist. LEXIS 259966 (C.D. Cal. Nov. 6, 2025); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024); *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 881 (N.D. Cal. 2024); *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695, at *47 (N.D. Cal. Dec. 22, 2021). Because the UCL imposes the stricter standing threshold, a plaintiff who satisfies UCL standing will, *a fortiori*, have suffered "any damage" sufficient to establish CLRA standing as well. *See B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970, at *19 (C.D. Cal. Feb. 1, 2024). Defendant argues that Plaintiff Pflaumer fails to allege damages, or any causal connection between Defendant's conduct and those damages. *See* Def.'s Mem. at 20-21. However, the Complaint alleges that Plaintiff Pflaumer visited Defendant's Website and interacted with its Cookie Banner and Cookie Settings, reasonably expecting that Defendant would not collect and share his Sensitive Information without consent. *See* Compl. ¶ 15. The Complaint further alleges that Defendant's facilitation of the unauthorized sale/sharing of Plaintiff Pflaumer's Sensitive Information diminished the value of that data and deprived Plaintiff Pflaumer of control over his data. *See* Compl. ¶¶ 2-12, 174, 215, 227-30, 243. Thus, Plaintiff Pflaumer has established damages sufficient to confer standing under the UCL and CLRA.

*See A.B. v. Google LLC*, 737 F. Supp. 3d 869, 881-82 (N.D. Cal. 2024); *Brown*, No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695, at *46-48; *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024-26. Further, the Complaint alleges that Defendant's conduct /was unlawful under the UCL because Defendant violated several other laws, i.e., predicate violations to UCL violations. *See* Compl. ¶¶ 223-29. Defendant's predicate violations make Plaintiff Pflaumer's UCL claims "independently actionable" under the UCL's "unlawful" prong. *See Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) ; *In re Zoom Video Communs. Inc. Privacy Litig.,* 525 F. Supp. 3d 1017, 1047 (N.D. Cal. 2021); *Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 886 (N.D. Cal. 2025).

### B. Plaintiff Pflaumer Is a "Consumer" Under the CLRA

Defendant next argues that because Plaintiff Pflaumer did not make any purchases during his visits to the Website, he is not a "consumer" under the CLRA and therefore lacks standing. *See* Def.'s Mem. at 21 (citing Cal. Civ. Code § 1761(d)). However, Cal. Civ. Code § 1761(d) defines "consumer" in the disjunctive as "an individual who ***seeks or acquires***, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d); *see also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1095 (N.D. Cal. 2006). The word "seeks" unambiguously encompasses prospective purchasers who have not yet completed a transaction, and Defendant's argument concedes as much. *See* Def.'s Mem. at 21 ("the plaintiff must have acquired ***or attempted to acquire***….") (emphasis added). Thus, even "consumers" who have not made a purchase have standing to bring CLRA claims so long as they have suffered damages, which is a "capacious" standard that "includes even minor pecuniary damage" and "opportunity costs…that result when a consumer is misled." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013). As explained above, Plaintiff Pflaumer meets that standard and therefore has standing to bring CLRA and UCL claims for Defendant's deceptive, unfair, and unlawful conduct

### C. Plaintiff Pflaumer's CLRA Claim Is Not Disposed of Via Technical Defects

Defendant's final CLRA arguments concern two procedural requirements, neither of which warrants dismissal of the claim. Defendant argues that Plaintiff Pflaumer's CLRA claim is defective because "he never provided Ace with the required statutory notice" under Cal. Civ. Code § 1782(a) prior to filing suit or filing an affidavit pursuant to Cal. Civ. Code § 1780(d). *See* Def.'s Mem. at 21-22. Notably, Defendant does not 1) contend that the current venue is improper or fails to meet the

requirements of the first paragraph of Cal. Civ. Code § 1780(d) (action may be commenced where "the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred"; or 2) provide any evidence on record showing that notice under Cal. Civ. Code § 1782(a) was "never" sent. With respect to the requirements of Cal. Civ. Code § 1782(a), a deficient notice only goes to claims for damages, as opposed to equitable relief. *See* Cal. Civ. Code § 1782(d). Thus, dismissal of the CLRA claim is inappropriate. Further, Plaintiffs sent Defendant a CLRA notice by certified mail on March 19, 2026. *See* Jensen Decl. ¶ 2; Exhibits A and B, annexed thereto. More than thirty days have since elapsed. Under § 1782(d), Plaintiffs may therefore amend to assert CLRA damages, and dismissal of the damages claim with prejudice is unwarranted. In any event, dismissal would be without prejudice subject to cure. *See Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2010). Failure to comply with Cal. Civ. Code § 1780(d) is similarly "a purely technical pleading defect" subject to cure. *See Higginson v. Kia Motors Am., Inc.*, 341 Cal. Rptr. 3d 732, 762-63 (2026). And where that defect has already been cured,[6] dismissal without prejudice is a "waste of judicial resources." *See Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 978 n.3 (C.D. Cal. 2024) ("Plaintiff has since filed a declaration satisfying the venue affidavit requirement. Thus, the Court sees no reason to waste judicial resources by dismissing the action without prejudice."). Dismissing a claim over a defect that has since been cured would serve no purpose but delay. Thus, Defendant's Motion should be denied.

**VI. Plaintiffs Have Stated a Claim for Common Law Fraud**

To recover damages for fraud, a plaintiff must show: (1) a misrepresentation or omission of material fact; (2) that the defendant knew to be false; (3) made with the intent to induce reliance; (4) upon which the plaintiff reasonably relied; and (5) that caused injury. *See Gabrielli,* 815 F. Supp. 3d at 872 (citing *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1194 (N.D. Cal. 2020)). Notably, Defendant does not contest misrepresentation, knowledge of falsity, intent to induce reliance, or reliance itself. Defendant challenges only the last requirement, arguing that Plaintiffs have failed to adequately plead damages. *See* Def.'s Mem. at 23. However, Plaintiffs have adequately pled damages for common law

[6] *See* Pflaumer Decl. annexed hereto.

fraud for the same reasons that Plaintiff Pflaumer has adequately stated a claim under the fraud prong of the UCL, i.e., diminution in value of and deprivation of control over their Sensitive Information. *See Gabrielli*, 815 F. Supp. 3d at 873, 873 n.10 (quoting *Davis*, 956 F.3d at 599-600); *see also Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *22. Thus, Plaintiffs have adequately pled damages resulting from Defendant's fraud.

**VII. Plaintiffs Adequately Plead Unjust Enrichment**

Defendant's challenge to the unjust enrichment claim is entirely derivative: it argues only that Ace cannot have retained a benefit because Plaintiffs supposedly provided nothing. Def.'s Mem. at 23-24. That argument falls with the standing theory addressed in Section I.A. To plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *23. Courts have permitted unjust enrichment claims where a plaintiff alleges an entitlement to defendant's profits derived from users' personal data. *See Davis*, 956 F.3d at 600; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *23-25; *Gabrielli*, 815 F. Supp. 3d at 875. So too here. Plaintiffs allege that Defendant profited by sharing their Sensitive Information without consent; a benefit Defendant retains to this day. *See A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024). Thus, Plaintiffs' allegations are sufficient to establish unjust enrichment

**CONCLUSION**

Defendant asks this Court to hold that a company may promise its users control over their data, break that promise, profit from the breach, and then escape every privacy statute on the books because its users did not type anything into a form. Neither the pleaded facts nor the law permits that result. For the foregoing reasons, Defendant's Motion should be denied. Should the Court grant Defendant's Motion, Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. Appx. 670, 671 (9th Cir. 2017). Here, the amendment would not be futile. Given the highly technical nature of the Tracking Tools at issue in this action, Plaintiffs could provide additional details related to Defendant's procurement, deployment, and use of the tools.

DATED: July 15, 2026

Respectfully submitted,

By: /s/ Eduard Korsinsky
Eduard Korsinsky (admitted *pro hac vice*)
ek@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Raphael Janove (SBN 361193)
raphael@janove.law
**JANOVE PLLC**
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (646) 347-3940

***Attorneys for Plaintiffs and the Proposed Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, July 15, 2026, I filed the foregoing Plaintiffs' Opposition to Defendant's Motion to Dismiss using the CM/ECF system. Notice of this filing will be sent automatically by the CM/ECF system to all counsel of record.

*/s/ Eduard Korsinsky*
Eduard Korsinsky