DAVID HORNIAK (SBN 268441)
david.horniak@us.dlapiper.com
**DLA PIPER LLP (US)**
500 8th St NW
Washington, DC 20004-2131
Telephone: 202.799.4361
Facsimile: 202.799.5361

MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
ACE HARDWARE CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SCOTT PFLAUMER, HANS CUMMINGS, and MARK ROSENTHAL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ACE HARDWARE CORPORATION,

Defendant.

Case No. 5:26-CV-02151-EJD

**DEFENDANT ACE HARDWARE CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Date: September 10, 2026
Time: 9:00 a.m.
Judge: Hon. Edward J. Davila
Courtroom: Courtroom 4
San Jose Courthouse
280 South First Street, 5th Fl.
San Jose, CA 95113

Complaint Filed: March 12, 2026

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....1

II. PLAINTIFFS FAIL TO ESTABLISH A CONCRETE HARM. ....1

A. ...... There is No Alleged Collection or Disclosure of Plaintiffs' Information. ....1

B. ...... There is No Legally Protectable Interest. ....3

C. ...... There is No Diminution in Value of Plaintiffs' Information. ....5

III. PLAINTIFFS FAIL TO STATE CIPA AND ECPA WIRETAPPING CLAIMS. ....6

A ...... Plaintiffs Fail to Allege the Interception of "Contents" While "In Transit." ....6

B. ...... Pflaumer's Attempt to Plead Aiding and Abetting Liability Fails. ....7

C. ...... The Crime-Tort Exception Does Not Save Plaintiffs' ECPA Claim. ....9

IV. PFLAUMER FAILS TO PLEAD A PEN REGISTER CLAIM. ....11

V. THE INVASION OF PRIVACY CLAIMS STILL FAIL. ....12

VI. PLAINTIFFS' EQUITABLE RELIEF CLAIMS ARE BARRED. ....13

VII. PFLAUMER'S CLRA AND UCL CLAIMS HAVE FURTHER DEFICIENCIES. ....13

VIII. PLAINTIFFS' FRAUD CLAIM FAILS FOR LACK OF DAMAGES. ....15

IX. PLAINTIFFS FAIL TO PLEAD ACE UNJUSTLY RETAINED ANY BENEFIT. ....15

X. CONCLUSION ....15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. PHH Mortgage*,
2026 WL 1353827 (N.D. Cal. May 14, 2026) ....................10

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) (Davila, J.) ....................7, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................9

*B.K. v. Desert Care Network*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) ....................9

*Blaker v. NetScout Systems, Inc.*,
2026 WL 1709143 (Cal. Super. Ct. May 27, 2026) ....................11

*In re Blue Shield of Cal. Priv. Litig.*,
2026 WL 2040561 (N.D. Cal. July 10, 2026) ....................2, 9

*Browning v. Am. Honda Motor Co.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) ....................13

*Caldwell v. InMobi Pte Ltd*,
2026 WL 1162828 (N.D. Cal. Apr. 29, 2026) ....................10

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ....................15

*Campbell v. Select Med. Corp.*,
2026 WL 2056651 (C.D. Cal. July 14, 2026) ....................3, 5

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ....................2, 4

*Corona v. Sony Pictures Ent., Inc.*,
2015 WL 3916744 (C.D. Cal. 2015) ....................5

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ....................15

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ....................9

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....................8, 9

*Evans v. Sleep No. Corp.*,
2025 WL 1093332 (E.D. Cal. Apr. 11, 2025)....................15

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ....................2, 4, 6, 12

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....................2, 4

*Garcia v. Anschutz Ent. Grp., Inc.*,
2026 WL 1278912 (C.D. Cal. May 5, 2026) ....................2

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ....................12

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....................2, 4

*D'Antonio v. Cable News Network, Inc.*,
2026 WL 960032 (S.D.N.Y. Apr. 9, 2026)....................4

*Gold Crest, LLC v. Project Light, LLC*,
2019 WL 9607648 (C.D. Cal. Dec. 18, 2019) ....................12, 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................12

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ....................6

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ....................4

*Hassid v. Alex & Ani, LLC*,
816 F. Supp. 3d 1196 (C.D. Cal. 2026) ....................4

*Heerde v. Learfield Communications, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................12

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) ....................15

*Herzman v. Smile Brands Inc.*,
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026)....................1

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ....................14

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) .......... 2

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) .......... 10

*King v. Conde Nast Pubs.*,
2012 WL 3186578 (C.D. Cal. Aug. 3, 2012) .......... 13

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 2, 3

*Krzyzek v. OpenX Technologies, Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 4

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 7

*Motekaitis v. USI Ins. Servs., LLC*,
2025 WL 2084923 (N.D. Cal. July 24, 2025) .......... 10

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 7

*Owens v. Smith, Gambrell & Russell Int'l, LLP*,
2024 WL 3914663 (C.D. Cal. May 30, 2024) .......... 5

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 2, 6

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) .......... 2, 3, 5

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 13

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 10

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 4

*Sisti v. Bosley Inc.*,
2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .......... 5, 6

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 13

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ....................12

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) ....................8

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ....................8

*In re Vizio, Inc. Consumer Privacy Litigation*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................12, 13

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ....................2

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ....................8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................6

**Statutes**

18 U.S.C. § 2511(1) ....................7

Cal. Civ. Code § 1761(d) ....................14

Cal. Civ. Code § 1780(d) ....................14

Cal. Civ. Code § 1782(a)(2) ....................14

Cal. Penal Code § 631(a) ....................7, 8, 9

Cal. Penal Code § 638.51 ....................1, 11

## I. INTRODUCTION

Plaintiffs' Opposition confirms what Ace's motion demonstrated: the Complaint rests on generic, boilerplate allegations about website cookies and undefined "Tracking Entities" rather than the specific facts that Article III standing and Plaintiffs' claims require. Plaintiffs do not identify or clarify what personal information any of them actually shared with or had collected from Ace's Website, and generic categories like "browsing activity, device identifiers, and related metadata" do not constitute the embarrassing, invasive, or otherwise private information needed to confer standing under binding authority in this circuit.

Plaintiffs still fail to state any of their claims: the wiretapping claims fail for lack of any allegation that the contents of a communication were intercepted "in transit" or that Ace or the "Tracking Entities" acted with the requisite intent, the pen register claim rests on an interpretation of Penal Code section 638.51 that no controlling authority supports, the invasion of privacy claim lacks any intentional or highly offensive conduct, the equitable relief claims are barred by the failure to plead an inadequate remedy at law, and the CLRA, UCL, fraud, and unjust enrichment claims each fail for want of the loss, benefit, or damage each requires. The Opposition does not cure these defects, and the Complaint should be dismissed in its entirety.

## II. PLAINTIFFS FAIL TO ESTABLISH A CONCRETE HARM.

### A. There is No Alleged Collection or Disclosure of Plaintiffs' Information.

Standing is an individualized inquiry. "[T]o survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Herzman v. Smile Brands Inc.*, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (dismissing because "complaint [was] devoid of specific factual allegations explaining what was actually disclosed to [d]efendant and what [d]efendant then allegedly disclosed to Google").

The Complaint lacks any allegation that Ace (or any third party) collected any of Plaintiffs' "Sensitive Information." *See, e.g.*, Compl. ¶ 5. The Opposition responds only "the breadth of personal information included in Plaintiffs' Sensitive Information, which was intercepted via Plaintiffs' navigation to and use of the Website and subsequently shared/sold to the Tracking Entities without consent; and the pervasiveness of the alleged tracking, including tracking

Plaintiffs across multiple websites and browsing sessions." Opp'n 5. This assertion fails to address that Plaintiffs continue to rely on generic allegations of tracking that do not identify what specific information was allegedly collected as to each Plaintiff. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (merely alleging the disclosure of "data" and "information," without greater specificity, is not enough to establish injury in fact).

The Opposition does not engage with nearly any of Ace's authorities that demonstrate why this type of pleading is insufficient. Indeed, just recently, Judge Gonzalez Rogers confirmed that "[c]ourts have held that there is no standing where plaintiffs merely allege their information 'could be captured' by tracking tools" instead of alleging the actual capture of any of their information. *In re Blue Shield of Cal. Priv. Litig.*, 2026 WL 2040561, at *5 (N.D. Cal. July 10, 2026) (quoting *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024)) (finding standing when plaintiffs alleged disclosure of information including "PII and PHI" and other identifiers). Plaintiffs' authorities do not alter this result. First, many of Plaintiffs' authorities do not discuss a defendant's challenge to whether a plaintiff pled a privacy harm based on the collection and disclosure of their own information. *See Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1104–06 (S.D. Cal. 2025); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2–3 (N.D. Cal. Jan. 6, 2026); *Garcia v. Anschutz Ent. Grp., Inc.*, 2026 WL 1278912, at *3–5 (C.D. Cal. May 5, 2026); *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *10–11 (N.D. Cal. Oct. 16, 2025).

Second, Plaintiffs' remaining authorities are distinguishable. *Gabrielli v. Haleon US Inc.* relied on *In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589 (9th Cir. 2020) to find similarly vague allegations sufficient, 815 F. Supp. 3d 852, 864 (N.D. Cal. 2025), but *Haleon* overlooked the Ninth Circuit's decision in *Popa v. Microsoft Corporation*, which found that the *Facebook* "analysis finds no support in *TransUnion*," 153 F.4th 784, 794 (9th Cir. 2025). *Pemberton* (which also relied on *Facebook*'s standing analysis) is also distinguishable. *See Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025). Ace respectfully disagrees with the weight the court placed on generalized allegations where the plaintiff merely alleged the defendants "***allowed***" the "Third Parties to track and collect [his] Private Communications." *Id.*

(emphasis added). Pleading that a website operator "allowed" the possible collection and disclosure of "Private Communications" is not the same as pleading that an individual's own communications with a website were collected or disclosed, or that the website operator caused this to occur. Therefore, Plaintiffs' allegations, which do not identify what specific information was allegedly collected as to each Plaintiff, are insufficient. *See Kishnani*, 2025 WL 1745726, at *3.

**B. There is No Legally Protectable Interest.**

Even if Plaintiffs' "Sensitive Information" was sent to "Tracking Entities," Plaintiffs failed to plead that they suffered a concrete harm because none of the alleged categories of "Sensitive Information" are actionable. *See generally* Mot. 5–8. "In the context of claims brought under data privacy statutes, a plaintiff typically needs to allege the disclosure of 'embarrassing, invasive, or otherwise private information' in order to allege an actionable injury in fact." *Campbell v. Select Med. Corp.*, 2026 WL 2056651, at *2 (C.D. Cal. July 14, 2026) (quoting *Popa*, 153 F.4th at 791). The relevant inquiry turns on the type of information at issue and whether its disclosure would be "highly offensive to a reasonable person." *Popa*, 153 F.4th at 791. Plaintiffs have not alleged the disclosure of any such information here.

The Opposition argues that Ace "ignores the breadth of personal information included in Plaintiffs' Sensitive Information." Opp'n 5. But Plaintiffs' Complaint contains no specific allegations describing any personal information that Plaintiffs provided when they visited the Website. For example, the Complaint does not allege Plaintiffs shared their name, age, location, any financial or health information with Ace or the "Tracking Entities." At best, Plaintiffs allege that the "Tracking Tools" collected and shared Plaintiffs' "browsing activity, device identifiers, and related metadata" (Compl. ¶¶ 15–17), which renders their allegation about the "breadth of personal information" shared all the more puzzling. Moreover, these are the exact types of information that *Popa* held insufficient to constitute concrete harm. *See Popa*, 153 F.4th at 791. The disclosure of device identifiers, metadata, and unspecified personal information that purportedly arose through "browsing activity" is not the "kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," including the torts of "intrusion upon seclusion" and "public disclosure of private facts." (*Id.;* Opp'n 10).

Plaintiffs' authorities do not save Plaintiffs from their pleading deficiencies. In *Gilligan v. Experian Data Corp.*, the court correctly distinguished *Popa* because the "[p]laintiffs allege[d] that Experian compiled detailed profiles by tracking their interactions across many websites, and that the tracking 'across the internet' remains ongoing." 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026). Here, Plaintiffs allege no such cross-site tracking or profile-building by Ace. For similar reasons, *Krzyzek v. OpenX Technologies, Inc.*, 817 F. Supp. 3d 857, 860 (N.D. Cal. 2026), is also distinguishable. There, the plaintiffs premised their harm on the alleged cross-site tracking by the defendant, which, unlike Ace, is "a registered data broker" that was the developer of a pixel that tracked the plaintiffs. Moreover, like in *Gilligan*, the plaintiffs alleged ***the defendant*** "compiled the information it gathered into a profile on [the] plaintiff[s]." *Id.* at 861 (emphasis added). Plaintiffs do not make any such allegations here.

Plaintiffs' other authorities fare no better. As Plaintiffs' authority, *Camplisson v. Adidas Am., Inc.* implied, the collection of information regarding "how the plaintiff interacted with the site rather than her personal, private information" is dispositive under *Popa*. *See* 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025). Moreover, *Camplisson*'s only cited authority in its discussion distinguishing *Popa* was *Gabrielli v. Haleon US Inc.*, which, as noted above, relied on pre-*TransUnion* and pre-*Popa* case law (and, in any event, concerned health websites). *Hassid v. Alex & Ani, LLC* is distinguishable for similar reasons. *See* 816 F. Supp. 3d 1196, 1201 (C.D. Cal. 2026) (relying on *Facebook* to assign standing to a bare alleged violation of CIPA and not analyzing nature of information allegedly collected). Due to its reliance on the flawed reasoning in *Camplisson* and *Gilligan*, *D'Antonio v. Cable News Network, Inc.* (an out-of-circuit opinion) is similarly distinguishable. *See* 2026 WL 960032, at *5 (S.D.N.Y. Apr. 9, 2026).

Further, *Harris v. iHeartMedia, Inc.* did not analyze any of the alleged data elements at issue—the analysis *Popa* mandates. *See* 2026 WL 247875, at *2 (N.D. Cal. Jan. 29, 2026). And, though while *Shah v. MyFitnessPal, Inc.* undertook this analysis, it noted that, unlike here, "the type of information allegedly collected . . . included interactions with MFP related to personal topics like nutrition and fitness tracking." 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026).

Plaintiffs' flawed reliance on these authorities leaves them with nothing aside from several

vaguely alleged categories of non-sensitive information associated with alleged website visits about Ace's products (e.g., barbecues and screwdrivers). Thus, Plaintiffs have not pled facts to establish concrete harm because their allegations do not concern any "embarrassing, invasive, or otherwise private information." *Popa*, 153 F.4th at 791. *Cf. Campbell*, 2026 WL 2056651, at *3 ("[D]isclosing that someone merely searched for publicly available information about certain diseases or medical treatments may not be enough, on its own, to rise to an actionable injury.")

**C. There is No Diminution in Value of Plaintiffs' Information.**

To premise concrete injury on loss in value of their information, Plaintiffs must allege more than merely the possibility that their information could have lost value. "[T]o survive a motion to dismiss on this theory of injury, a plaintiff 'must establish both the existence of a market for h[is] personal information and an impairment of h[is] ability to participate in that market.'" *Sisti v. Bosley Inc.*, 2026 WL 1223927, at *4 (C.D. Cal. Apr. 27, 2026) (quoting *Owens v. Smith, Gambrell & Russell Int'l, LLP*, 2024 WL 3914663, at *6 (C.D. Cal. May 30, 2024)). A plaintiff cannot merely "explain[] at length that 'consumer data' has value to third party data aggregators"; instead, they must plausibly allege that the "particular data allegedly disclosed about Plaintiff 'has any compensable value in the economy at large.'" *Id.* (quoting *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. 2015)).

The Opposition claims that "a review of the Complaint refutes" Ace's claim that Plaintiffs have not alleged that any of their data carries value. Opp'n 9. In support of this claim, the Opposition cites to Paragraphs 43 and 71 of the Complaint. But these allegations are the exact type of allegations courts find too general to plausibly allege diminution in value. Paragraph 43 merely claims—without any reference to Plaintiffs or their data—that the "Tracking Tools ***enable*** Defendant and Tracking Entities to earn more money and enhance marketing effectiveness through the collection, analysis, and dissemination of users' Sensitive Information." Compl. ¶ 43 (emphasis added). Meanwhile, Paragraph 71 alleges that "[a]fter receiving the Sensitive Information, Google provides analysis and feedback, which helps Defendant monetize the collected information through targeted advertising." *Id.* ¶ 71. These allegations lack any reference to: (1) Plaintiffs; (2) their data; (3) the value of their data; (4) an attempt to sell their data; or (5) a

market where they could sell their data—the critical elements Plaintiffs must (but have not) pled to allege this theory of injury-in-fact. *See Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022); *Sisti*, 2026 WL 1223927, at *4.

Plaintiffs' authorities do not compel a different result. In *Pemberton*, the court expressly stated that "the Court need not address Defendants' arguments Plaintiff has not shown injury through diminution in the value of his personal information." *Pemberton*, 2025 WL 3268404, at *4. In *Facebook*, the plaintiffs "point[ed] to the existence of a study that values users' browsing histories at $52 per year, as well as research panels that pay participants for access to their browsing histories." *Facebook*, 956 F.3d at 600. The Complaint does not contain any such allegations here. Therefore, this theory of concrete injury still fails.

## III. PLAINTIFFS FAIL TO STATE CIPA AND ECPA WIRETAPPING CLAIMS.

### A. Plaintiffs Fail to Allege the Interception of "Contents" While "In Transit."

Plaintiffs' Complaint fails to plead multiple required elements of a CIPA or ECPA wiretapping claim, including that the "contents" of Plaintiffs' communications were intercepted while "in transit." *See* Mot. 10–11. These required elements are not merely words to parrot, especially under a criminal statute. Plaintiffs' lack of any specificity dooms their claims.

Plaintiffs' Opposition confirms that the Complaint's vague allegations do not "refute" Ace's argument. Opp'n 10. First, Plaintiffs cite to Paragraph 11 of the Complaint, which alleges that Plaintiffs "communicated information to Defendant through their browsers, including browsing activity, product views, and interaction data reflecting their interests." Compl. ¶ 11. But Plaintiffs offer no specific pieces of information that Ace or any of the alleged "Tracking Entities" ever collected regarding the "substance, purport or meaning of their communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Even more critically, Plaintiffs' allegations about their experiences on the Website simply discuss "browsing activity, device identifiers, and related metadata," and, for Plaintiff Pflaumer, "the pages and product information he chose to review." Compl. ¶¶ 15–17. As to the "device identifiers and related metadata," Plaintiffs allege non-actionable "record information." *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding information such as "keystrokes," "[p]laintiff's IP address," and

"the operating system on her device" insufficient to constitute "contents"). As to "pages and product information he chose to review," Pflaumer does not specify any URLs revealing the contents of his page views, searches or any other information that would allow the "Tracking Entities" to intercept and read the contents of Pflaumer's communications. *See* Compl. ¶¶ 15–17; Cal. Penal Code § 631(a); 18 U.S.C. § 2511(1). The rest of the Opposition's citations to the Complaint fail to specify anything regarding Plaintiffs' own communications, *see* Compl. ¶¶ 103–06, which Plaintiffs' authority confirms is insufficient to allege "contents," *see MyFitnessPal*, 824 F. Supp. 3d at 919. The Opposition's reliance on *Ortiz v. Foris Dax, Inc.* (its sole authority) only helps Ace. *See* Opp'n 10–11. There, the court dismissed the CIPA wiretapping claims due to the exact same deficiencies present here. *See* 2026 WL 1430720, at *6 (N.D. Cal. May 21, 2026). In particular, Judge Chen reasoned that the plaintiffs' complaint was "silent on the actions [the plaintiffs] *personally* took on the Crypto.com website after clicking the 'disable cookies' button." *Id.* (emphasis in original). Like in *Ortiz*, Plaintiffs' Complaint fails to discuss the actions that Plaintiffs "personally took on [the Website]" that caused any collection or disclosure of the "contents" of their communications. *See id.* This deficiency independently dooms these claims.

These claims also fail because the Complaint does not plausibly allege that the "Tracking Entities" intercepted any communication "in transit." *See* Mot. 10–11. The Opposition argues that Plaintiffs adequately allege the interception of their communications while "in transit" simply by parroting the Complaint's conclusory and generalized allegations. *See* Opp'n 11–12. Plaintiffs cite Paragraph 105 of the Complaint, which makes the conclusory allegation that contemporaneous tracking occurs but fails to explain how that occurred here. Paragraphs 58 through 99 similarly do not discuss how these "Tracking Tools" engage in any simultaneous interception of communications. *See* Compl. ¶¶ 58–99. At bottom, Plaintiffs fail to answer "the crucial question . . . [of] whether [Ace] has plausibly alleged that [the "Tracking Entities"] read [their] communications while . . . still in transit, i.e., before [they] reached [their] intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (citation omitted).

**B. Pflaumer's Attempt to Plead Aiding and Abetting Liability Fails.**

Pflaumer's CIPA claim independently fails because he fails to allege that Ace intended to

violate Section 631(a)'s fourth clause. As a threshold matter, Ace has applied the correct, common law intent standard under Section 631(a)'s aiding and abetting inquiry. To sufficiently allege aiding and abetting liability, Plaintiffs must allege that Ace either (1) knew the "Tracking Entities" acted in a way that breached a duty and gave "substantial assistance or encouragement" or (2) gave "substantial assistance" to the "Tracking Entities" in "accomplishing a tortious result." *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024).

The Opposition challenges this standard. But, at bottom, Section 631(a) is a criminal statute. Indeed, as *Esparza v. UAG Escondido A1 Inc.* noted, in the absence of a statutory "intent" definition, other courts have applied the common law definition of aiding and abetting to claims arising from a statute assigning liability to a third party. *See, e.g.*, *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024); *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 485 (2023) (applying common law aiding and abetting standard). Though Ace recognizes the "competing line of cases" that depart from the common law standard, Ace respectfully submits that the Court should apply a criminal intent standard to a criminal statute. A standard of "using cookies on a website denotes intent" implies that any business using standard cookie-management tools ***intended*** those tools to malfunction and thereby facilitate unlawful surveillance. *See Esparza*, 2024 WL 559241, at *6 (rejecting inference and intent standard).

Pflaumer's allegations—which the Opposition simply parrots (*see* Opp'n 12–13)—make clear that Plaintiffs fail to allege Ace acted with common-law scienter. For example, the Opposition recites the allegation that "Defendant voluntarily integrated Tracking Tools from various Tracking Entities into its Website's programming." *See id.* (quoting Compl. ¶ 38); *see also id.* ¶¶ 66, 92–93, 95. But simply installing tools on a website does not rise to the level of knowing any "Tracking Entities" would commit an unlawful wiretap or substantially assisting such a wiretap. As to Ace's "commercial agreements" with the "Tracking Entities," Pflaumer does not allege (even on information and belief) that the contracts contemplated any unauthorized interception of Website users' communications. The Opposition's attempt to punt this issue to discovery is unavailing, as Pflaumer cannot rely on discovery to cure his Complaint's basic pleading deficiencies. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021)

("[T]he Supreme Court has been clear that discovery cannot cure a facially insufficient pleading." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

The Opposition also fails to cure the Complaint's failure to allege the "Tracking Entities" intended to commit an underlying violation. As the *Esparza* court's earlier decision noted, "the first two clauses of section 631 require a showing of intentional or willful conduct, respectively." *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293, at *2 (S.D. Cal. Aug. 5, 2024) (citing Cal. Penal Code § 631(a)). The Opposition contends that "intent under the second clause would be attributable to [Ace] rather than the Tracking Entities." Opp'n 14. This is true under a theory of direct liability, which would be impossible here because Ace cannot intercept its own communications with Pflaumer. Thus, for Ace to be liable under the fourth clause's aiding and abetting theory, Pflaumer would need to allege that the "Tracking Entities" acted ***intentionally*** to commit an underlying violation of Section 631(a)'s first or second clause. And, as set forth in Ace's motion, simply alleging that Ace permitted third-party cookies on the Website does not mean those third parties intended to commit an unlawful wiretap. *See* Mot. 12–13; *B.K. v. Desert Care Network*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024). As such, Pflaumer's attempt to premise his Section 631(a) CIPA claim on aiding and abetting liability fails.

### C. The Crime-Tort Exception Does Not Save Plaintiffs' ECPA Claim.

Plaintiffs' ECPA claim independently fails because Plaintiffs' procurement theory is not actionable and they do not plausibly allege Ace's purpose was to commit a criminal or tortious act, much less that it actually engaged in such an act. Plaintiffs' Opposition confirms that they seek to hold Ace liable "[as] a procurer rather than a direct interceptor." Opp'n 15. This theory fails as a matter of law. "[C]ourts have read Sections 2520 and 2511 together to provide a private right of action only against defendants who intercept communications or disclose or use communications while knowing the communications were obtained through interception—not against those who merely procure or aid and abet another to intercept." *In re Blue Shield of Cal. Priv. Litig.*, 2026 WL 2040561, at *7 (citation omitted).

The Opposition then vaguely claims that "Plaintiffs' claims for intrusion upon seclusion and fraud provide a basis for the crime-tort exception," Opp'n 15, but does not expand on that claim.

The authorities that Plaintiffs cite for this proposition are also distinguishable. *Caldwell v. InMobi Pte Ltd* involved a CIPA claim, not an ECPA claim. *See generally* 2026 WL 1162828 (N.D. Cal. Apr. 29, 2026). *Allison v. PHH Mortgage* involved allegations that the defendant "collected and disclosed [users' sensitive financial information] while representing in its Privacy Contracts that it did not do so." *See* 2026 WL 1353827, at *11 (N.D. Cal. May 14, 2026). While Ace disagrees with the reasoning of *Riganian v. LiveRamp Holdings, Inc.*, the case nevertheless involved allegations against LiveRamp, "a registered 'data broker' in California," which "'associate[ed] [the plaintiffs'] data with preexisting [identity] profiles' and then preparing that data for sale on LiveRamp's data marketplace." 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025). That conduct is not alleged against Ace here. More critically, the Complaint does not discuss or even cite to ECPA's crime-tort exception. *See* Mot. 14. Now, "Plaintiffs cannot introduce a new theory of the case in an opposition brief." *Motekaitis v. USI Ins. Servs., LLC*, 2025 WL 2084923, at *7 (N.D. Cal. July 24, 2025) (citation omitted). But that is exactly what their Opposition attempts to do. For example, Plaintiffs introduce the theory that Ace's alleged "violation of CIPA" triggers the exception. Opp'n 16. That theory appears nowhere in Plaintiffs' Complaint.

At best, the Complaint generally alleges that Ace's alleged conduct occurred "for the unlawful purpose of monetizing the Plaintiffs' intercepted information, including for combining that information with information collected about Plaintiffs from across the internet and used for advertising, analytics, and marketing optimization." Compl. ¶ 160. The Opposition's attempt to distinguish this Court's decision in *J.S. v. Spring Fertility Holdings, LLC* is unavailing. *See* Opp'n 16. Plaintiffs attempt to claim that *Spring Fertility Holdings* is distinguishable because "the only allegations related to the defendant's criminal/tortious purpose were 'for advertising' and/or 'targeted advertising purposes.'" Opp'n 16 (quoting 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026)). Plaintiffs state that unlike in *Spring Fertility Holdings*, they alleged Ace engaged in a "subsequent use" of the intercepted information "for marketing and analytics purposes." *Id.* The issue with this argument is that Plaintiffs overlook their own allegations which mirror those in *Spring Fertility Holdings*. Plaintiffs similarly allege that Ace intercepted information "for advertising, analytics, and marketing optimization." Compl. ¶ 160. While Plaintiffs allege Ace

"allowed [the 'Tracking Entities'] to intercept the communications of users on the Website, in order to subsequently disclose those communications to the Tracking Entities," Plaintiffs do not explain why this allegation should alter the result that *Spring Fertility Holdings* reached. Accordingly, Plaintiffs' Opposition does not cure their invocation of the crime-tort exception.

## IV. PFLAUMER FAILS TO PLEAD A PEN REGISTER CLAIM.

The Opposition fails to cure Pflaumer's failure to plead a pen register claim. First, no binding Ninth Circuit or California Court of Appeals decision has held that the pen register statute applies to internet tracking technology. Understanding "the majority rule in federal district courts," *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 897 (N.D. Cal. 2026) (Davila, J.), California state trial courts continue to express disapproval for interpreting the pen register statute beyond its plain text and legislative history. For example, the court in *Blaker v. NetScout Systems, Inc.* recently dismissed a similar pen register claim ***with prejudice*** because "applying the ordinary rules of statutory construction and considering both the structural context of Penal Code section 638.51 and the legislative history . . . this statute applies to telephonic communications and not to software on a commercial website." 2026 WL 1709143, at *4 (Cal. Super. Ct. May 27, 2026).

Pflaumer's pen register claim also fails because Pflaumer relies on a logically inconsistent interpretation of the statute. Citing this Court's decision in *In re Apple Data Priv. Litig.*, the Opposition claims that "courts have routinely rejected [Ace's] argument and sustained [pen register] claims on materially similar allegations and tracking technology." Opp'n 18. But *In re Apple Data Priv. Litig.*, which ***dismissed*** the plaintiffs' pen register claim, demonstrates the same pleading deficiencies apparent here. There, the "[p]laintiffs expressly incorporate[d] by reference and re-allege[d] each and every allegation set forth in [the complaint's prior allegations], including their allegation that Apple's apps captured confidential communications." 824 F. Supp. 3d at 898 (cleaned up). This Court reasoned that "[t]hese inconsistent allegations and causes of action"—not pled in the alternative—"are another ground for dismissal of Plaintiffs' pen register claim." *Id.* (citation omitted). Similarly, for his claim, Plaintiff Pflaumer does not plead the use of a pen register in the alternative. Rather, "Plaintiff Pflaumer incorporates the allegations in paragraphs 1–12 and 15–134 by reference as if fully set forth herein," including allegations that Ace

intercepted the contents of his communications. *See, e.g.*, Compl. ¶¶ 103–08 ("Defendant Intercepted the Contents of Communications in Transit"). Pflaumer's failure to allege the "Tracking Tools" only collected non-content information is fatal to his claim. *See Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *6 (N.D. Cal. Jan. 12, 2026). The claim should be dismissed.

## V. THE INVASION OF PRIVACY CLAIMS STILL FAIL.

Plaintiffs fail to allege intrusion upon seclusion or invasion of privacy because the Complaint does not allege that Ace intentionally configured the "Necessary Cookies Only" button to malfunction or engaged in any "highly offensive" conduct. *See* Mot. 17–19.

First, the Opposition ignores Ace's argument that the Complaint fails to allege the requisite intentional conduct. *See* Mot. 18–19. Plaintiffs have therefore conceded this argument. *See Gold Crest, LLC v. Project Light, LLC*, 2019 WL 9607648, at *1 (C.D. Cal. Dec. 18, 2019) ("Arguments not addressed by the opposing party are normally deemed conceded.") (citations omitted).

Second, Plaintiffs failed to plead a reasonable expectation of privacy in the information allegedly tracked because they do not even allege what specific information they shared with the Website. *See* Mot. 5–6. The Opposition further claims that Ace "independently created an additional basis for Plaintiffs' reasonable expectation of privacy by falsely representing to Plaintiffs that they could control what information was shared with third-party Tracking Entities." *Id.* Recently, *Garcia v. Blackhawk Network, Inc.* rejected this argument, holding an alleged cookie banner misrepresentation "goes only to the first element" and rejected the notion that "the misrepresentation alone is enough to meet the highly offensive bar." 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026). Plaintiffs' hypothetical allegations are similarly fatal because they fail to allege any specific information about Plaintiffs' Website visits.

Third, the Opposition's authorities regarding "highly intrusive" conduct are unavailing. *Heerde v. Learfield Communications, LLC* relied on *Facebook*, which, as discussed above, involved a far more invasive intrusion. 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024). *Greenley v. Kochava, Inc.* involved the "surreptitious collection [of] information that could reveal, for instance, a person's religious affiliation, sexual orientation, and medical condition," which is not alleged here. 684 F. Supp. 3d 1024, 1047 (S.D. Cal. 2023). Similarly, *In re Vizio, Inc. Consumer*

*Privacy Litigation* concerned video "viewing history," which is not alleged. 238 F. Supp. 3d 1204, 1212 (C.D. Cal. 2017). The plaintiffs in *Price v. Carnival Corp.* "alleged that Carnival used the intercepted information to 'back-reference all of [a] user's web browsing across other websites previously visited, including on websites where the user had intended to remain anonymous.'" 712 F. Supp. 3d 1347, 1363 (S.D. Cal. 2024). As noted (*see* discussion *supra* at Section II.B), Plaintiffs do not allege that Ace engaged in such conduct—only the "Tracking Entities," which are not defendants here. Finally, *Smith v. Rack Room Shoes, Inc.* did not discuss these claims. *See generally* 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025). Accordingly, Plaintiffs fail to allege the interception of any "highly offensive" information. *See* Mot. 17–18.

## VI. PLAINTIFFS' EQUITABLE RELIEF CLAIMS ARE BARRED.

Plaintiffs' failure to allege an inadequate legal remedy precludes their equitable relief requests. *See* Mot. 19. In response, the Opposition claims that "there is no monetary relief that can make Plaintiffs whole by mandating that Defendant change its business practices and discontinue use of Plaintiffs' Sensitive Information." Opp'n 21. Critically, this argument fails to account for the Complaint's dearth of any allegation that damages would be an insufficient remedy. Plaintiffs cannot use their Opposition to introduce this allegation for the first time. *Gold Crest*, 2019 WL 9607648, at *1. Accordingly, *Sonner* still bars Plaintiffs' claims. *See Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1014 (N.D. Cal. 2021) ("[S]ince Plaintiffs have not pled that they lack an adequate remedy at law, all their equitable claims, including those for restitution and prospective injunctive relief, fail.") (citation omitted).

## VII. PFLAUMER'S CLRA AND UCL CLAIMS HAVE FURTHER DEFICIENCIES.

The Opposition fails to overcome the additional pleading shortcomings from which Pflaumer's CLRA and UCL claims suffer. First, Pflaumer fails to adequately allege the requisite loss of money or property for his UCL claim. *See* Mot. 20. That "Plaintiff Pflaumer visited Defendant's Website and interacted with its Cookie Banner and Cookie Settings" falls far short of establishing a "loss or deprivation of money or property" that "was the result of" Ace's alleged conduct. Opp'n 22; *King v. Conde Nast Pubs.*, 2012 WL 3186578, at *5 (C.D. Cal. Aug. 3, 2012). And while Pflaumer alleges that Ace's conduct "diminished the value of that data and deprived

Plaintiff Pflaumer of control over his data" (Opp'n 22), Pflaumer cites only to vague allegations that do not describe any deprivation of money or property Pflaumer suffered. And because Pflaumer bootstraps his CLRA damages argument, (*see* Opp'n 22), his damages arguments for both claims necessarily fail.

Second, the Opposition confirms that Pflaumer is not a "consumer" as defined by the CLRA. *See* Mot. 21. The extent of Pflaumer's allegations regarding his Website activity is that "[d]uring [his Website] visit," which he conducted "for consumer browsing purposes," "Plaintiff Pflaumer reviewed product information regarding screwdrivers." Compl. ¶ 15. The Opposition claims this allegation falls under the "seeks or acquires" portion of the CLRA's "consumer" definition (*see* Cal. Civ. Code § 1761(d)) because "'seeks' unambiguously encompasses prospective purchasers who have not yet completed a transaction." Opp'n 23. The Opposition does not cite any authority supporting this interpretation. And its lone authority, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013), did not analyze Section 1761(d)'s "consumer" definition. As such, Pflaumer fails to explain how he constitutes a "consumer" under the CLRA.

Third, Pflaumer's attempt to cast aside his CLRA notice and venue affidavit shortcomings fails. First, the Opposition claims that "Plaintiffs sent Defendant a CLRA notice by certified mail on March 19, 2026." Opp'n 24 (citing Jensen Decl. ¶ 2, Exs. A & B). Exhibit A to the Jensen Declaration depicts a letter sent to "16767 N. Perimeter Drive, #110 Scottsdale, AZ 85260." Jensen Decl., Ex. A at 1. This address does not belong to and is not affiliated with Ace, and Ace never received this letter. Declaration of Lindsey Hegarty in Support of Defendant Ace Hardware Corporation's Reply in Support of Motion to Dismiss, ¶ 3. "Defendant Ace Hardware is a for-profit corporation, incorporated under the laws of the State of Delaware, with its principal place of business in Oak Brook, Illinois." Compl. ¶ 18. The CLRA requires pre-suit notice to be sent "to the place where the transaction occurred or to the person's principal place of business within California." Cal. Civ. Code § 1782(a)(2). Pflaumer's decision to mail the notice to an Arizona address therefore precludes his claim for damages. Further, the Opposition fails to justify Pflaumer's lack of a venue affidavit explaining why venue is proper here. *See* Mot. 22; Cal. Civ. Code § 1780(d). This too dooms his CLRA claim.

## VIII. PLAINTIFFS' FRAUD CLAIM FAILS FOR LACK OF DAMAGES.

Plaintiffs' fraud claim fails because Plaintiffs do not allege damage resulting from the allegedly fraudulent conduct. *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009); *Evans v. Sleep No. Corp.*, 2025 WL 1093332, at *9 (E.D. Cal. Apr. 11, 2025) ("[D]eception without resulting loss is not actionable fraud.") (citation omitted). The Opposition simply avers that Plaintiffs adequately pled damages "for the same reasons that Plaintiff Pflaumer has adequately stated a claim under the fraud prong of the UCL, i.e., diminution in value of and deprivation of control over their Sensitive Information." Opp'n 25. But this claim fails for the reasons set forth above (*see supra* Section II.C). In any event, the Opposition fails to address Ace's argument that Plaintiffs have failed to allege how they experienced any damages beyond their conclusory and non-personalized assertions of loss or how such damages resulted from Ace's alleged conduct. *See* Mot. 23. Their fraud claim should therefore be dismissed.

## IX. PLAINTIFFS FAIL TO PLEAD ACE UNJUSTLY RETAINED ANY BENEFIT.

Plaintiffs' unjust enrichment claim remains deficient because Plaintiffs fail to allege Ace retained any benefit that Plaintiffs purportedly conferred. Plaintiffs must—but have not—"'show[n] that [Ace] received and unjustly retained [a] benefit at the plaintiff's expense.'" *California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). Without any citations to the Complaint, the Opposition contends Plaintiffs have alleged they "shar[ed] their Sensitive Information" with Ace. For the reasons set forth above (*see* Section II.A), this argument fails, and Plaintiffs' claim falls with it.

## X. CONCLUSION

Ace respectfully requests that the Court dismiss Plaintiffs' claims.

Dated: July 29, 2026

DLA PIPER LLP (US)

By: */s/ David Horniak*
David Horniak

*Attorneys for Defendant*
Ace Hardware Corporation