United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT PFLAUMER, et al.,<br>Plaintiffs,<br>v.<br>ACE HARDWARE CORPORATION,<br>Defendant. | Case No. 5:26-cv-02151-EJD<br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; STAYING CASE PENDING ARBITRATION; TERMINATING AS MOOT MOTION TO DISMISS**<br>Re: Dkt. Nos. 20, 28 |

Plaintiffs Scott Pflaumer, Hans Cummings, and Mark Rosenthal ("Plaintiffs") bring consumer protection and privacy claims against Defendant Ace Hardware ("Defendant") arising out of Defendant's alleged unauthorized tracking and sale of their online data. Compl., ECF No. 1. Before the Court are Defendant's motion to compel arbitration and motion to dismiss. Mot. to Compel Arb. ("Arb. Mot."), ECF No. 20; Mot. to Dismiss ("MTD"), ECF No. 28. Both motions are fully briefed. Opp'n to Arb. Mot., ECF No. 26; Reply re Arb. Mot., ECF No. 33; Opp'n to MTD, ECF No. 34; Reply re MTD, ECF No. 37.

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral arguments. For the reasons explained below, the Court **GRANTS** the motion to compel arbitration, **STAYS** this case pending arbitration, and **TERMINATES** the motion to dismiss as moot.

## I. BACKGROUND

Defendant operates a commercial website, acehardware.com ("the Website"), where consumers can browse and purchase hardware products, tools, home improvement supplies, and

more. Compl. ¶¶ 2, 18. When a consumer opens the Website, it displays a cookie banner ("Cookie Banner") informing users that they may control the sale and/or sharing of their personal data via the Website's cookie settings. *Id.* The Cookie Banner appears as follows:




Compl. ¶ 2.

As indicated in the imaged depicted above, consumers are informed that they can reject the Website's use of advertising, marketing, and analytics cookies by consenting only to cookies that are essential to the Website's functionality. *Id.* ¶¶ 2–9, 38–50. Plaintiffs allege that they each accessed the Website and affirmatively selected "Necessary Cookies Only." *Id.* ¶¶ 15–17. Despite this selection, however, Plaintiffs allege that the Website continued to track their personal data and share it with advertising, social media, and analytics companies. *Id.* ¶¶ 7, 83–89.

Defendants contend that Plaintiffs' claims must be arbitrated. *See* Arb. Mot. The Cookie Banner informs visitors that by selecting any option, closing the banner, or continuing to browse, they accept and agree to Ace's Terms of Use ("Terms of Use"). *See* Compl. ¶ 2; *see also* Mot., Ex. B ("Terms of Use"), ECF No. 20-3. The Terms of Use contains a mandatory arbitration clause ("Arbitration Agreement") covering all claims related to Ace's website, products, or services. Terms of Use, at 12. By selecting the option "Necessary Cookies Only," Defendant

argues that Plaintiffs agreed to the Terms of Use, and therefore, agreed to arbitrate their claims.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration agreements are subject to generally applicable state law contract defenses. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

In determining whether to compel a party to arbitrate, the court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal quotation marks and citation omitted). Once it is established that a valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

Parties seeking to avoid arbitration are subject to the same standards applicable to parties opposing summary judgment under Federal Rule of Civil Procedure 56. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (finding summary judgment standard is appropriate because order compelling arbitration "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate"). Therefore, the moving party bears the initial burden of informing the court of the basis for the motion. *Curry v. Matividad Med. Ctr.*, No. 5:11-CV-04662-EJD, 2013 WL 2338110, at *1 (N.D. Cal. May 28, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this initial burden, the burden then shifts to the opposing party to present specific facts showing that

there is a genuine issue for trial. *Id.* at 2.

## III. DISCUSSION

Defendant argues that Plaintiffs' claims are subject to mandatory arbitration because: (1) the arbitration clause is a valid and enforceable contract, and (2) the issue of arbitrability is reserved for the arbitrator. The Court agrees on both fronts.

### A. Valid and Enforceable Contract

To form a contract under California law,[1] there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014), and with equal force to contracts formed online, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022).

In the online context, internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms" and generally fall on a spectrum ranging from "clickwrap" to "browsewrap." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 16 (2021)); *see also Berman*, 30 F.4th at 856. "[C]lickwrap" agreements are those in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed. *Berman*, 30 F.4th at 856. Browsewrap agreements, on the other end of the spectrum, are agreements in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website. *Id.* In the middle of the spectrum are sign-in wrap agreements, also known as "modified clickwrap agreement[s]," whereby a user is "notified of the

[1] While Defendant also argues that Plaintiffs' claims are subject to a choice-of-law provision that selects the laws of the State of Illinois, Defendant concedes "no differences exist in the law of the different states as to internet contract formation." Arb. Mot. at 6 (quoting *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025)). Both parties also rely on California contract formation law in their briefing, so the Court will do the same.



United States District Court
Northern District of California

existence of the website's terms of use and advise[d] . . . that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023).

Here, the Cookie Banner constitutes a modified sign-in wrap agreement. Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. The Court will examine each element in turn.

**1. Reasonably Conspicuous Notice of the Terms**

Reasonably conspicuous notice requires that notice is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it," and if there is a hyperlink, the "the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857. Courts generally analyze two factors to determine whether notice of the terms was reasonable: (1) the context of the transaction, and (2) the visual placement of the notice. *See Keebaugh*, 100 F.4th at 1019.

**a. Context of the Transaction**

When evaluating sign-in wrap agreements, courts generally evaluate the full context of the transaction, including whether the transaction contemplated "a continuing, forward-looking relationship" governed by terms and conditions. *Sellers*, 289 Cal. Rptr. 3d at 16; *see also Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) ("The nature of an agreement may anticipate some sort of continuing relationship . . . that would require some terms and conditions[.]") (citation omitted).

Here, Plaintiffs Cummings and Rosenthal both allege to have maintained accounts on the Website, and Plaintiff Pflaumer alleges that he visited the Website multiple times in 2025 and 2026. Compl. ¶¶ 15–17.

As for Cummings and Rosenthal, the maintenance of accounts signals a reasonable anticipation of a continuing relationship governed by terms and conditions. *See, e.g., Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 574 (6th Cir. 2026) ("If users would reasonably anticipate 'some sort of continuing relationship' with an operator (such as when they sign up for an account), courts are more likely to find a proposal conspicuous because consumers would expect terms to govern the relationship.") (citing *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 946 (2022)).

As for Pflaumer, however, the Court is not persuaded that repeat visits to the Website alone signal an ongoing relationship. *See id.* ("[I]f users would not anticipate any relationship with the operator once they leave the site, courts are less likely to find the terms conspicuous [if] users would not expect contracts to govern that one-off visit."). But this is not the end of the inquiry for Pflaumer. Even if the context of the transaction did not signal a continuing relationship, notice can be reasonably conspicuous if the visual placement of the agreement is clear.[2]

**b. Visual Placement**

"A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text." *Sellers*, 289 Cal. Rptr. 3d at 29. "Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage." *Berman*, 30 F.4th at 856. Because "online providers have complete control over the design of their websites," *Sellers*, 289 Cal. Rptr. 3d at 16, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). For example, in *Berman*, the Ninth Circuit found

[2] The Court notes it also finds unpersuasive Plaintiffs' argument that a reasonable internet user would not expect a cookie banner to include contractual terms, citing *Dahdah*, 166 F.4th at 574–75. Even if a consumer may not ordinarily equate a cookie banner with an arbitration clause or terms of service, the Court finds this particular Cookie Banner provides explicit notice that users do in fact agree to the Terms of Use by taking the actions identified therein.

United States District Court
Northern District of California

two lines of small gray font that stated, "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy" failed to put the plaintiff on notice of the arbitration provision in part because the underlined terms "appeared in the same gray font as the rest of the sentence, rather than in blue, the color typically used to signify the presence of a hyperlink." *Berman*, 30 F.4th at 856–57. Conversely, courts have also found that underlined text is sufficient "when viewed in the context of the overall design and content of the webpage." *Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (finding reasonably conspicuous notice on an underlined hyperlink where (1) the hyperlink appeared "directly below" the action button, (2) the hyperlink was set off by "ample white spacing" and "primarily surrounded by text no larger than the notice itself," and (3) the "general design of the webpage," was "relatively uncluttered and ha[d] a muted, and essentially uniform, color scheme").

The Court finds that the visual placement of the Terms of Use provided reasonably conspicuous notice. The **TERMS OF USE** link is bold, underlined, all caps, bright blue, sits against a contrasting white backdrop, and located directly above the action buttons. When users click on **TERMS OF USE**, they are brought to the Terms of Use document. In the second paragraph of the first page, this document provides: "**PLEASE READ THESE TERMS OF USE CAREFULLY BEFORE USING THE ONLINE SERVICES. THESE TERMS OF USE CONTAIN PROVISIONS THAT LIMIT YOUR LEGAL RIGHTS, INCLUDING AN ARBITRATION PROVISION** . . . ." Terms of Use, at 1 (emphasis in original). Then further down in the document, Section 20 outlines the Arbitration Agreement as follows:

> All claims arising out of or relating to any agreement with Ace and any Ace site, product, service, application, or tool, including these Terms of Use (collectively, 'Ace Offerings'), will be resolved exclusively through binding arbitration according to the Dispute Resolution Terms, available at **https://www.acehardware.com/dispute-resolution-terms**. The Dispute Resolution Terms are hereby incorporated by reference in these Terms of Use. We both agree that all claims must be brought in an individual capacity and not as a plaintiff or class member in any purported class or representative action or proceeding.

United States District Court
Northern District of California

*Id* at 12; *see also* Arb. Mot., Ex. C, at 12.[3]

Plaintiffs argue that, despite the conspicuous nature of the link, users are not sufficiently notified of the Cookie Banner itself because the background behind it is cluttered. The surrounding webpage, Plaintiffs contend, contains colorful graphics, offers, deals, etc., and the Cookie Banner occupies only a small fraction of the crowded page on the lower left-hand corner. Plaintiffs attach the following depiction:




Opp'n to Arb. Mot., Ex. 1, ECF No. 26-4. Plaintiff argues that the Website has similar "clutter" to the depictions in *Berman* and *Chabolla*.

However, the Court finds the Cookie Banner and Terms of Use link here readily distinguishable. To begin, neither *Berman* nor *Chabolla* involved cookie banners that are permanently affixed to the screen while users scroll. *See Berman*, 30 F.4th at 855–56 (disclosure located in sign up window); *Chabolla*, 129 F.4th at 1155 (same). And further, the disclosures in *Berman* and *Chabolla* lacked the prominent features present here, such that the disclosures in those cases more easily disappeared in the clutter. *See, e.g., Kroskey v. Elevate Labs, LLC*, No.

[3] Defendant attaches as exhibits the Terms of Use in effect during Plaintiffs' Website visits in 2025 and 2026, but both documents contain materially the same Arbitration Agreement.

5:24-CV-08113-EJD, 2025 WL 1507091, at *4 (N.D. Cal. May 27, 2025) (depicting *Berman* website and describing in greater detail). While the Website's background contains colorful images; unlike *Berman* and *Chabolla*, the Cookie Banner here is a separate white box that conspicuously contrasts with the colorful background, and the **TERMS OF USE** link's formatting—bold, underlined, all caps, and bright blue—makes the agreement reasonably conspicuous.[4]

The Court therefore finds that the notice here is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it," and the hyperlink is "readily apparent." *Berman*, 30 F.4th at 857. Accordingly, Defendant satisfied its requirement to provide reasonably conspicuous notice of the Terms of Use and the Arbitration Agreement therein.

### 2. Unambiguous Manifestation of Assent

The Court also finds that Plaintiffs unambiguously manifested their intent to be bound. Plaintiffs all allege to have affirmatively selected "Necessary Cookies Only," which was located directly underneath the notice that selecting this option equates to accepting and agreeing to the Terms of Use. Compl. ¶¶ 15–17. Other than advancing the same arguments discussed above regarding reasonably conspicuous notice, Plaintiffs do not meaningfully dispute this point.

### 3. Enforceability

Plaintiffs also argue that, even if there was reasonably conspicuous notice and unambiguous manifestation of intent, the Court should not compel arbitration because: (1) the arbitration provision is unconscionable, and (2) the class waiver improperly prohibits public injunctive relief.[5] The Court will address each argument in turn.

---

[4] The Court also notes Plaintiffs' argument that the entire Cookie Banner is undetectable to a reasonable consumer is contradicted by allegations that they, in fact, located the banner and made an affirmative selection.

[5] Defendant urges the Court to reserve these issues for resolution by the arbitrator pursuant to a delegation clause. However, "parties cannot delegate issues of [contract] formation to the arbitrator." *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021); *see also Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) ("[Courts] must

United States District Court
Northern District of California

**a. Unconscionability**

A court may refuse to enforce an arbitration agreement if it is found unconscionable. *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). "Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid," and courts "utilize[] a sliding scale to determine unconscionability—greater substantive unconscionability may compensate for lesser procedural unconscionability." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).

The Court begins with procedural unconscionability. "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Id.* (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) and *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (Ct. App. 1982)). Oppression is measured by the weaker party's absence of choice and unequal bargaining power that results in "no real negotiation." *Id.* (internal quotation marks omitted) (quoting *A & M Produce*, 186 Cal. Rptr. at 122). Surprise is measured by "the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* (citing *Parada v. Superior Ct.*, 176 Cal. App. 4th 1554 (2009)).

Here, Plaintiffs contend that the Arbitration Agreement is unconscionable because it was presented as a contract of adhesion. However, the "fact that the arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable." *Serafin v. Balco Props. Ltd.*, LLC, 235 Cal. App. 4th 165, 179 (2015). Without the addition of oppression or surprise, "[c]ourts have consistently held that the requirement to enter into an arbitration agreement is not a bar to its enforcement." *Id.*; *see also Zullo v. Superior Ct.*, 197 Cal. App. 4th

---

determine whether a contract ever existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator.") (quoting *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1340 (9th Cir. 1990)). The Court will therefore address Plaintiffs' arguments regarding the validity and enforceability of the arbitration clause before deferring any issues for resolution by the arbitrator.

United States District Court
Northern District of California

477, 484 (2011). And the Court finds no facts to suggest oppression or surprise occurred here.

Accordingly, the Court finds Plaintiffs failed to show procedural unconscionability and need not examine Plaintiffs' arguments regarding substantive unconscionability. *Chavarria*, 733 F.3d at 922 ("[A] contract must be *both* procedurally and substantively unconscionable to be rendered invalid.") (emphasis added).

**b. Class Waiver**

Plaintiffs also challenge a class action waiver in the Dispute Resolution Terms that provides, in relevant part: "[T]he arbitrator may award relief (including monetary, injunctive, and declaratory relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief necessitated by that party's individual claim(s). Any relief awarded cannot affect any other person or party." Arb. Mot., Ex. D ("Dispute Resolution Terms"), at 2, Ex. E, at 2.[6]

"In California, contractual provisions waiving the right to seek public injunctive relief in any forum are unenforceable." *Keebaugh*, 100 F.4th at 1022 (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961, 393 P.3d 85, 94 (2017)). "To implicate *McGill*, the arbitration provision must . . . prohibit the arbitrator from awarding relief that would affect those other than plaintiff." *Id.* (quoting *Patrick v. Running Warehouse*, 93 F.4th 468, 478 (9th Cir. 2024)). In other words, a ban on public injunctive relief is unenforceable under *McGill* where "[t]he Terms of Service restrict the available remedies an arbitrator may award to the scope 'necessary to provide relief warranted by that party's individual claim.'" *Id.* at 1021–22.

Here, the Court agrees with Plaintiffs that the waiver of public injunctive relief in the Arbitration Agreement is plainly unenforceable under *McGill*. *Compare id.* (limiting relief to only that which is "necessary to provide relief warranted by that party's individual claim"), *with* Dispute Resolution Terms (limiting relief "only to the extent necessary to provide relief

[6] Defendant attaches as exhibits the Dispute Resolution Terms in effect during Plaintiffs' Website visits in 2025 and 2026, but both documents contain the same language.

necessitated by that party's individual claim"). Defendant does not meaningfully contest this fact, other than to argue that this is a question that should be decided by the arbitrator, which the Court addressed above.

However, this does "not necessarily require voiding the *entire* arbitration provision." *Keebaugh*, 100 F.4th at 1022. Courts often sever unenforceable provisions from arbitration agreements so long as the provisions do not impact the central purposes of the contract and no other unlawful terms taint the arbitration agreement with illegality. *Flora v. Prisma Labs, Inc.*, No. 23-CV-00680-CRB, 2023 WL 5061955, at *7 (N.D. Cal. Aug. 8, 2023) (collecting cases). And the Court finds that removing the waiver of public injunctive relief from the Arbitration Agreement does not impact the central purpose of the agreement itself, and no other terms otherwise taint the agreement. Further, severance is explicitly permitted in the Terms of Use, which specifies that "in the event this arbitration agreement is held to be unenforceable for any reason, the prohibitions on class and representative actions and non-individualized relief set forth in this paragraph are severable and shall apply to any claim between you and Ace in any forum." Arb. Mot., Ex. D, at 2, E, at 2.

Accordingly, the Court finds the class action waiver does not defeat Defendant's motion to compel arbitration.

**B. Arbitrability**

Finally, the Court finds any issues regarding the arbitrability of Plaintiffs' claims are delegated to the arbitrator. The Dispute Resolution Terms expressly provide that arbitration "AAA Consumer Rules" govern any arbitration proceedings, and these rules delegate questions of arbitrability to the arbitrator. Dispute Resolution Terms; *see also Mcmillon v. Bridgecrest Acceptance Corp.*, No. CV 25-1699-JFW(PDX), 2025 WL 2631617, at *5 (C.D. Cal. Aug. 13, 2025) (citing AAA Rule R-7(a)). It is well-settled that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Diaz v. Intuit, Inc.*,

United States District Court
Northern District of California

No. 5:15-CV-01778-EJD, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017) (collecting cases).

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion to compel arbitration. This case is **STAYED** pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). The parties shall notify the Court within ten days of reaching a final resolution in the pending arbitration.

Defendant's motion to dismiss is **TERMINATED** as moot.

**IT IS SO ORDERED.**

Dated: November 9, 2026

EDWARD J. DAVILA
United States District Judge